MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-228-9898
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER<br><br>Plaintiff,<br><br>vs.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY<br><br>Defendant. | Civil Action No: 10-4260 (GEB)(MCA)<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, North Jersey Brain & Spine Center ("NJBSC"), by way of Complaint, alleges as follows:

## THE PARTIES

1. Plaintiff, North Jersey Brain & Spine Center ("NJBSC") a medical practice specializing in surgery and treatment of the brain and spinal cord and having its office located at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649. At all relevant times, the plaintiff was (and is) an "out-of-network" medical practice that provided various neurosurgical medical services to subscribers enrolled in the healthcare plans of defendants.

2. Defendant Connecticut General Life Insurance Company (Collectively "CIGNA") maintains its corporate offices in Connecticut. CIGNA is a managed care company consisting of several healthcare plans providing healthcare coverage to its subscribers for both "in-plan" and "out-of-network" medical services.

## SUBSTANTIVE ALLEGATIONS

3. CIGNA operates, controls and/or administers managed healthcare insurance plans providing health and medical coverage to its members and dependents. At all relevant times, CIGNA provided certain members and/or their dependents with "out-of-network" benefits, enabling these individuals to gain access to the physicians (providers) of their choice, rather than limiting access only to "in-plan" physicians as would be true with a health maintenance organization plan.

4. Specifically, in this case, the plaintiff's highly qualified neurosurgeons successfully performed complex neurosurgical procedures on the subscribers or their dependents. It is not disputed that all of the surgical procedures performed were "medically necessary" and were approved by CIGNA.

5. In each instance, prior to NJBSC rendering services, CIGNA agreed to directly compensate plaintiff the usual, customary and reasonable fee ("UCR") for the services provided. Consequently, in each instance, NJBSC reasonably believed and relied upon CIGNA's express or implied representations that plaintiff would be paid UCR and on that basis agreed to render the services. Just by way of illustrative example, and without limitation as to patients, dates and services, with regard to services rendered to patient R.L (name withheld due to confidentiality), on July 6, 2004 NJBSC's representative spoke with "Enid," CIGNA's representative. During that communication, defendant's representative

confirmed with plaintiff that R.L. had out-of-network coverage and that CIGNA would pay "70% of doctor's usual, reasonable and customary fees." Relying on this confirmation, NJBSC's surgeons rendered services to R.L on July 27, 2004. However, CIGNA subsequently paid plaintiff significantly less than the amount it agreed to pay. Similarly, with regard to services rendered to patient N.I. (name withheld due to confidentiality), on February 9, 2004, NJBSC's representative spoke with "Theresa," CIGNA's representative. During that communication, defendant's representative confirmed with plaintiff that N.I. had out-of-network coverage and that CIGNA would pay "70% of usual, reasonable and customary fees [and that] after $2,500 out of pocket expense, CIGNA will pay 100%." Relying on this confirmation, NJBSC's surgeons rendered services to N.I. on April 14, 2004. However, once again CIGNA subsequently paid plaintiff significantly less than the amount it agreed to pay.

6.   UCR is the fee that "out-of-network" providers, like the plaintiff, normally charge to their patients in the free market, i.e., without a written provider agreement with an insurance company to reduce such a charge in exchange for obtaining access to the insurance company's subscribers. Moreover, UCR means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

7.   Here, the net effect of CIGNA's intentional and improper acts in refusing to make correct payment to NJBSC, despite defendant's representations to the contrary, was to force NJBSC to suffer the loss by accepting less than the plaintiff was entitled to receive for the medical services it performed. It is also completely unreasonable to assume that the subscribers could each pay what would amount to several thousands of dollars out of their own pockets for each surgical procedure improperly paid for by CIGNA.

8. Although not required to do so, NJBSC has nonetheless appealed CIGNA's improper claims payments but defendant has provided only incomplete or evasive responses to the plaintiff's inquiries and/or has refused to pay any additional fees.

9. By and through this lawsuit, NJBSC now seeks damages from CIGNA, including compensatory and punitive damages, for promissory estoppel, misrepresentation and unjust enrichment. Plaintiff's claims arise solely under state common law and do not implicate ERISA whatsoever, nor require any review or consideration of so-called "plan documents." In short, NJBSC's claims are based solely on the confirmation of payment terms by defendant to plaintiff's representative prior to the practice's rendering of the services.

## FIRST COUNT
### (Promissory Estoppel)

10. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

11. In reliance upon CIGNA's confirmation of UCR payment prior to rendering services, NJBSC provided defendant's subscribers or dependents with "medically necessary" care and treatment.

12. At no time did defendant ever withdraw its confirmation of UCR payment.

13. Despite defendant's continued confirmation of UCR payment, defendant has not appropriately paid NJBSC for the medical services rendered.

14. Defendant's actions have therefore caused plaintiff to suffer a detriment of a definite and substantial nature in reliance upon defendant's promise to pay UCR for the medical services rendered, thus constituting an actionable claim pursuant to the doctrine of promissory estoppel.

15. NJBSC has suffered significant damages as a result.

WHEREFORE, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorney's fees; and

e) Such other relief as the Court deems equitable and just.

## SECOND COUNT
### (Negligent Misrepresentation)

16. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

17. Despite its confirmation of UCR payment prior to plaintiff's rendering of the services, defendant negligently refused to pay the subject claims appropriately or at all in accordance with said confirmation. Because of defendant's negligence, plaintiff was paid less than it reasonably expected to be paid.

18. Defendant's negligent misrepresentation of UCR payment was unknown to plaintiff at the time it agreed to perform the medical services for the subscribers and/or their dependents. Plaintiff reasonably expected and relied upon what it believed to be defendant's honest representations that the plaintiff would be properly compensated in accordance with the payment confirmation.

19. NJBSC's reliance on these representations was to its substantial detriment and as a result the plaintiff suffered significant money damages.

20. By virtue of the foregoing, defendant has committed negligent misrepresentation.

WHEREFORE, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorney's fees; and

e) Such other relief as the Court deems equitable and just.

## THIRD COUNT
### (Unjust Enrichment)

21. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

22. At all relevant times, defendant consistently and systematically refused to pay plaintiff UCR for the medical services rendered contrary to defendant's confirmation of payment terms.

23. Defendant has therefore been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to plaintiff.

24. As a result of defendant's unjust enrichment, NJBSC has suffered damages.

WHEREFORE, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

b) Costs of suit;

d) Attorney's fees; and

e) Such other relief as the Court deems equitable and just.

## FOURTH COUNT
### (Intentional Misrepresentation)

25. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

26. Despite its confirmation of UCR payment prior to plaintiff's rendering of services, CIGNA intentionally refused and has continued to refuse to pay the subject claims appropriately or at all. Because of defendant's intentional, willful and wanton conduct, plaintiff was paid significantly less than it should have been paid.

27. Defendant's intentional false promise to pay claims in accordance with its UCR confirmation was unknown to plaintiff at the time it agreed to perform the medical services for the subscribers and/or their dependents. Plaintiff reasonably expected and relied upon what it believed to be defendant's honest representations that the plaintiff would be properly compensated in accordance with the payment confirmation.

28. NJBSC's reliance on these representations was to its substantial detriment and as a result plaintiff suffered significant money damages.

29. By virtue of the foregoing, defendant has committed intentional misrepresentation.

WHEREFORE, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Punitive damages;

c) Interest;

d) Costs of suit;

e) Attorney's fees; and

f) Such other relief as the Court deems equitable and just.

> **MAZIE SLATER KATZ & FREEMAN, LLC**
> Attorneys for Plaintiff
>
> By: _____
> ERIC D. KATZ

DATED: November 12, 2010

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

> **MAZIE SLATER KATZ & FREEMAN, LLC**
> Attorneys for Plaintiff
>
> By: _____
> ERIC D. KATZ

DATED: November 12, 2010

H:\EDK\Comp Neuro\CIGNA IV\CIGNA APPEALS\Complaint -US District Court 11-3-10.doc