UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

NORTH JERSEY BRAIN & SPINE CENTER,

    Plaintiff,

vs.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY,

    Defendant.

: Civil Action No.:10-4260(GEB)(MCA)

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND CASE TO SUPERIOR COURTOF NEW JERSEY**

**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

Of Counsel and On the Brief:
    Eric D. Katz

# TABLE OF CONTENTS

**Pages**

INTRODUCTION and RELEVANT STATEMENT OF FACTS ................................................. 1

LEGAL ARGUMENT .............................................................................................................. 4

POINT I .................................................................................................................................... 4

   NJBSC'S CLAIMS DO NOT IMPLICATE ERISA WHATSOEVER AND
   DO NOT ARISE OUT OF AN ERISA ASSIGNMENT OF BENEFITS .............................. 4

POINT II ................................................................................................................................. 14

   THERE IS NO DIVERSITY JURISDICTION .................................................................... 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases** **Pages**

Airparts Co. v. Custom Benefit Services, 28 F.3d 1062 (10th Cir. 1994)..........................12

Alliance Health of Santa Teresa v. National Presto Industries, Inc.,
137 N.M. 537 (N.M. Ct. App. 2005) ..................................................................................3,11

Beth Israel Medical Center v. Sciuto, 1993 U.S. Dist. LEXIS 9145 (S.D.N.Y. 1993) ..................2,10

Hoag Memorial Hospital v. Managed Care Administrators,
820 F. Supp. 1232 (C.D. Cal. 1993) ..................................................................................2,8

Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.,
944 F.2d 752 (10th Cir. 1991) ........................................................................................2,5,9,12

In Home Health, Inc. v. Prudential, Ins. Co., 101 F.3d 600 (8th Cir. 1996).........................12

Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d 1529 (11th Cir. 1994)..............................12

McCall v. Metropolitan Life Ins. Co., 956 F. Supp. 1172 (D.N.J. 1996)..............................2,10

Memorial Hospital Systems v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990)........2,6,9

O'Keefe v. Hess Corp., 2010 WL 3522088 (D.N.J., September 1, 2010)..............................3

Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337 (D.N.J. 2001) ................................3

Oettinger v. Township of Bedminster, 2010 WL 3035147
(D.N.J., Aug. 3, 2010)..........................................................................................................3.

The Meadows v. Employers Health Insurance, 47 F.3d 1006 (9th Cir. 1995) ....................2,4

Transitional Hospital Corp. v. Blue Cross and Blue Shield of Texas, Inc.,
164 F.3d 952 (5th Cir. 1999) ..............................................................................................2,7

Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida,
942 F. Supp. 562 (S.D. Fla. 1996) .....................................................................................2,4

**OTHER**:

28 U.S.C. §1332(a) .............................................................................................................14

## INTRODUCTION and RELEVANT STATEMENT OF FACTS

North Jersey Brain & Spine Center ("NJBSC") submits this brief in support of its motion to remand this action to the Superior Court of New Jersey. This action was initially removed by defendants CIGNA Healthcare of New Jersey, Inc. ("CIGNA-NJ") and CIGNA Corporation ("CIGNA Corp."). Two (2) grounds for removal were alleged: (1) federal question subject matter jurisdiction under ERISA and diversity subject matter jurisdiction. (D.E.1). As a result of a stipulation between the parties, CIGNA-NJ and CIGNA Corp. were dismissed and NJBSC filed an amended complaint substituting defendant Connecticut General Life Insurance Company ("CGLIC") in their place. (D.E. 8-9). In so stipulating, the parties expressly agreed that NJBSC reserved all rights to contest subject matter jurisdiction, giving rise to the instant motion. (Id.).

As noted above, CGLIC assert two bases for federal subject matter jurisdiction. First, that there is a federal question because NJBSC's claims are allegedly fully preempted by ERISA. Second, that there is diversity because CGLIC is a foreign corporation and that the $75,000 amount in controversy prong is satisfied. As we explain below, however, a review of plaintiff's well-pleaded complaint and the accompanying Certification of NJBSC's billing manager, Lee Goldberg ("Goldberg Cert.") demonstrate that plaintiff's state law claims are not preempted by ERISA, nor that the $75,000 amount in controversy satisfied. NJBSC's remand motion should therefore be granted.

In the case at bar, NJBSC, a non-participating neurosurgical provider, rendered surgical services to two patients. Specifically, with regard to services rendered to patient R.L (name withheld due to confidentiality), on July 6, 2004 NJBSC's representative spoke with "Enid," CGLIC's representative. During that communication, defendant's representative confirmed with plaintiff that R.L. had out-of-network coverage and that CGLIC would pay "70% of doctor's

1

usual, reasonable and customary fees." Relying on this confirmation, NJBSC's surgeons rendered services to R.L on July 27, 2004. However, CGLIC subsequently paid plaintiff significantly less than the amount it agreed to pay. Similarly, with regard to services rendered to patient N.I. (name withheld due to confidentiality), on February 9, 2004, NJBSC's representative spoke with "Theresa," CGLIC's representative. During that communication, defendant's representative confirmed with plaintiff that N.I. had out-of-network coverage and that CGLIC would pay "70% of usual, reasonable and customary fees [and that] after $2,500 out of pocket expense, CGLIC will pay 100%." Relying on this confirmation, NJBSC's surgeons rendered services to N.I. on April 14, 2004. However, once again CGLIC subsequently paid plaintiff significantly less than the amount it agreed to pay. (See Amended Complaint at "THE PARTIES" at ¶1-2 and "SUBSTANTIVE ALLEGATIONS" at ¶¶ 3-9) (D.E. 9).

Courts from around the country, including New Jersey, have held in near unanimity that a provider may bring suit against a health insurer -- **pursuant to state common law theories** -- for payment of its services where those services are rendered in reliance on the insurer's pre-authorization and pre-certification of coverage. The provider does not bring a lawsuit of this type as an assignee of ERISA benefits from the patient but, **rather**, solely in the practice's capacity as an independent third-party healthcare provider. See Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida, 942 F. Supp. 562 (S.D. Fla. 1996); The Meadows v. Employers Health Insurance, 47 F.3d 1006 (9th Cir. 1995); Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc., 944 F.2d 752 (10th Cir. 1991); Memorial Hospital Systems v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990); Transitional Hospital Corp. v. Blue Cross and Blue Shield of Texas, Inc., 164 F.3d 952 (5th Cir. 1999); Hoag Memorial Hospital v. Managed Care Administrators, 820 F. Supp. 1232 (C.D. Cal. 1993); McCall v.

Metropolitan Life Ins. Co., 956 F. Supp. 1172 (D.N.J. 1996); Beth Israel Medical Center v. Sciuto, 1993 U.S. Dist. LEXIS 9145 (S.D.N.Y. 1993); Alliance Health of Santa Teresa v. National Presto Industries, Inc., 137 N.M. 537 (N.M. Ct. App. 2005).

Here, NJBSC brings this action on its own, not as an assignee of benefits from CGLIC's members or its dependents. NJBSC's claims are direct and independent of whatever claims the members or their dependents may possibly have against the carrier and **arose solely from the misrepresentations made by defendant during pre-certification and verification of payment terms prior to plaintiff's rendering of services.** This dispute is therefore nothing more than a common law state law issue, and does not implicate ERISA whatsoever. In addition, and independent of the alleged federal question, no diversity jurisdiction exists. This is because the amount in controversy is only $63,092.32 (Goldberg Cert. at ¶¶2-4), and therefore less than the required $75,000.

It is well settled that "[a] removing party bears the burden of establishing that federal jurisdiction exists . . . .Further, [the] removal [petition] . . . is strictly construed against removal and all doubts . . . resolved in favor of remand." Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 341 (D.N.J. 2001). "Federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law. . . The party bring suit necessarily decides the law under which its claims will be advanced. Oettinger v. Township of Bedminster, 2010 WL 3035147, *1 (D.N.J., Aug. 3, 2010) (citations omitted). See O'Keefe v. Hess Corp., 2010 WL 3522088, *3 (D.N.J., September 1, 2010) ("pursuant to the well pleaded complaint rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not allege a federal claim on its face.") (citations omitted). Because NJBSC's claims do not implicate ERISA and there is no diversity jurisdiction, plaintiff's remand motion should be granted.

3

# LEGAL ARGUMENT

## POINT I

### NJBSC'S CLAIMS DO NOT IMPLICATE ERISA WHATSOEVER AND DO NOT ARISE OUT OF AN ERISA ASSIGNMENT OF BENEFITS

Courts from around the country have held in near unanimity that when a provider relies upon a carrier's pre-authorization of treatment and pre-certification of coverage, it may sue the insurer for denied or misrepresented payment in its independent status as third-party healthcare provider and <u>not</u> as an assignee of benefits under the subscriber's ERISA insurance plan.

In <u>Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida</u>, 942 <u>F. Supp.</u> 562 (S.D. Fla. 1996), a hospital brought an action against Blue Cross to recover for treatment of a subscriber's child. As in the case at bar, the hospital had obtained from Blue Cross pre-authorization for admission and pre-certification of coverage prior to admitting the child and then, in reliance upon the pre-authorization and pre-certification, provided the child with medically necessary care and treatment. In addition, throughout the period of treatment, Blue Cross never withdrew its previous authorization or certification but refused to pay, with the exception of one nominal payment, for the medical and hospital related services rendered. <u>Id</u>. at 566. In holding that the provider's quasi-contact promissory estoppel claim was actionable, the court noted that it was brought <u>not</u> "as an [ERISA] assignee of benefits, [but rather] in its independent status as a third-party healthcare provider." <u>Id</u>. at 567-68.

Similarly, in <u>The Meadows v. Employers Health Insurance</u>, 47 <u>F.3d</u> 1006 (9th Cir. 1995), Meadows, a substance abuse treatment facility, telephoned the HMO regarding the existence of coverage prior to rendering treatment to the patient. The carrier verified coverage and, in reliance thereon, the treatment facility provided care. Subsequently, despite the representations of coverage, the carrier refused to pay for the treatment. Meadows then filed suit against the

insurer claiming state law negligent misrepresentation, estoppel and breach of contract. The defendant removed the matter to federal court on the basis of alleged ERISA preemption. The district court dismissed the action without prejudice explaining that because the provider sued derivatively (i.e., based on an assignment of benefits) ERISA preempted the state law claims. The district court went on to note, however, that had the provider "not sued derivatively as an assignee or subrogee of the [patient], it 'might have had a claim based simply on the representations that the [insurer] made to [the provider].'" Id. at 1008.

Taking the district court's lead, Meadows re-filed, again alleging the same three counts as stated in the original complaint, but this time not asserting any claims as an assignee or subrogee. Instead, the provider "sued only as a third-party health care provider for claims that were non-derivative and independent of those which the [patients] might have had." Id. The matter was again removed to federal court but was remanded. The HMO appealed. The Ninth Circuit affirmed, concluding that the provider's claims were actionable because they were not brought as "an assignee of a purported ERISA beneficiary but as an independent entity claiming damages." Id. (emphasis in original).

In Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc., 944 F.2d 752 (10th Cir. 1991), a hospice sued an insurer, doing business as Blue Cross and Blue Shield of Oklahoma, for misrepresenting that a patient was covered prior to rendering care. The hospice had treated the patient in reliance on the carrier's representation. In concluding that the hospice's promissory estoppel claim was actionable, the Tenth Circuit noted:

> Hospice does not claim any rights under the plan, and does not claim any breach of the plan contract. The promissory estoppel claim does not seek to enforce or modify the terms of the plan . . . . [The patient] is not a party to this action, and his right to receive benefits under the plan is not at issue. Id. at 754.

5

In so holding, the court relied on Memorial Hospital Systems v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990), discussed infra, widely cited as the leading authority on the issue of HMO misrepresentation of coverage. As in Memorial Hospital Systems, the Hospice court also recognized the pragmatic effect of denying providers a means to secure payment for medical services rendered:

> The court stressed the importance of considering the "commercial realities" . . . , stating that if health care providers have no recourse . . . under state law, there will be reluctance on the part of health care providers to extend care without prepayment. We agree. 944 F.2d at 755 (citation omitted).

The Tenth Circuit concluded: "An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer [or by its assignee] seeking recovery of benefits due under the terms of the insurance plan." Id. at 756.

In summary, it is crystal clear that NJBSC may bring state law claims, arising ex contractu or quasi ex contractu, which are completely independent of, and unrelated to, any claims that may arise based on an ERISA assignment of benefits. The plaintiff's claims (promissory estoppel, misrepresentation and unjust enrichment) originate directly from its dealings and relationship with defendant, a relationship that was forged when the plaintiff requested and received verification of payment terms from CGLIC prior to treating the patients. NJBSC relied on the defendant's representations when it agreed to render this treatment. Assignments of benefits and ERISA are irrelevant to these transactions.

Moreover, the providing of a pre-certification of coverage and then reneging on the promise of payment has given rise to fraud and misrepresentation claims from around the country, including New Jersey. Memorial Hospital System v. Northbrook Life Ins. Co., 90F.2d

6

236 (5th Cir. 1990), widely considered the seminal case on this issue, succinctly summarized the "commercial realities" attendant to the verification of coverage and the actionable disputes arising when insurers intentionally or negligently misrepresent that coverage to providers:

> **The scenario depicted in Memorial's appeal is one that is reenacted each day across the country. A patient in need of medical care requests admission to a hospital (or seeks treatment from a doctor). The costs of medical care are high and many providers have only limited budget allocations for indigent care and for losses from patient non-payment. Naturally, the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided.**
>
> If a provider believes that a patient may be covered under a health plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to admit the patient without further ado. Memorial contends that when an insurance company or its agent, . . . verifies coverage to a third-party provider, the insurer should recognize the commercial implications to the provider of its assurances. Under Memorial's theory, the insurance company is agreeing to pay expenses within the represented terms of the policy or to accept the consequences for a false representation of coverage that the provider reasonably relied upon.
>
> \* \* \*
>
> To insulate the insurance carriers from liability leaves the medical care provider without recourse against the party causing its damage, if it acts in reliance on the representation of coverage. Had the insurance carrier not falsely or negligently provided information, the appellant could have sought alternative means to ensure that it received payment for services before rendering them.
>
> \* \* \*
>
> If providers have no recourse under . . . state law in situations such as the one <u>sub judice</u> (where there is no coverage under the express terms of the plan, but a provider has relied on assurance that there is such coverage), providers will be understandably reluctant to

7

> accept the risk of non-payment, and may require up-front payment by beneficiaries -- or impose other inconveniences -- before treatment will be offered. Id. at 246-47 (emphasis added).

In Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas, Inc., 164 F.3d 952 (5th Cir. 1999), a hospital admitted a patient for treatment resulting in charges of almost $500,000. Blue Cross and Blue Shield of Texas paid the provider the paltry sum of $1,200. The hospital subsequently filed suit alleging that prior to rendering treatment Blue Cross misrepresented that the plan would reimburse the hospital for 100% of its bills. Id. at 953.

The hospital's complaint alleged breach of contract, common law misrepresentation and statutory misrepresentation under Texas insurance laws. Although the defendant removed the action to federal court on the ground of alleged ERISA preemption, it was promptly remanded. On appeal, the Fifth Circuit affirmed the remand, noting that the hospital's misrepresentation claims were brought independently as a third-party provider, and not pursuant to an assignment of benefits:

> [W]hen there is some coverage, . . . the court [must] take the next analytical step and determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan. [The hospital's] state-law claims alleging common law misrepresentation . . . are not dependent on or derived from [the patient's] right to recover benefits under the . . . plan. Rather, [the hospital] alleged that to the extent that [the patient] is not covered by the policies represented by Blue Cross to [the hospital], [Blue Cross] made misrepresentations actionable under common law . . . . Id. at 955 (citations omitted).

Here, as in Transitional Hospitals, NJBSC agreed to treat the patients based upon the representations of coverage and payment promises made to the provider prior to rendering the services. NJBSC has not been paid in accordance with defendant's representations for its

8

services. NJBSC's state law claims are totally independent of any ERISA claim that the patients may have directly or which could have been possibly assigned to the provider.

Similarly, in Hoag Memorial Hospital v. Managed Care Administrators, 820 F. Supp. 1232 (C.D. Cal. 1993), a hospital brought suit against an insurance plan to collect charges for services rendered to the defendant's subscriber. Like the case at bar, "[p]ursuant to customary business practices," the hospital contacted the plan to verify coverage before rendering treatment. Id. at 1233. The plan subsequently advised the hospital that it was denying its claim for payment. The hospital filed suit in state court alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and deceit, negligent misrepresentation and estoppel. The case was removed to federal court on the grounds of alleged ERISA preemption. Id. at 1233-34.

The district court noted that the hospital was not suing as an assignee of the insurance plan but, rather, was maintaining its own direct claims against the insurer. In concluding that the hospital may proceed with its direct claims for fraud and negligent misrepresentation, the district court relied heavily on Hospice of Metro Denver and Memorial Hospital Systems, discussed supra. The court noted:

> **In effect, when insurance companies and plan administrators verify coverage to third-party health care providers, they are creating an independent obligation of the plan to pay for the services rendered in reliance thereon.** In this sense, the case cannot be divorced from the commercial realities and consequences of the scenario that it presents. . . . Hospitals [and other providers] routinely contact plan administrators before admitting a patient in order to verify coverage. Due to hospitals' limited funds for indigent care, if a hospital is told that no coverage exists, the hospital either must obtain funds from another source or transfer the patient to another facility. **Thus, if a plan administrator or insurance company unqualifiedly verifies coverage to a health care provider, it should realize that either it is consenting to the payment of plan benefits or it should**

9

> **except the consequences for a false representation of coverage that the provider reasonably relied upon.** Id. at 1236 (citation omitted and emphasis added).

The Hoag court also understood that the hospital would be left with no remedy if the claims of fraud and negligent misrepresentation were dismissed. It concluded that providers "should not be denied the right to seek a remedy to redress their wrong." Id. at 1238. The court held:

> **Insurance companies and plan administrators must recognize the implications of their unqualified verifications of coverage. When they assure third-party health care providers that the plan will pay for the costs of the care and treatment provided, they are creating independent obligations of the plan. Insurance companies . . . should not be immunized from suit for their careless or erroneous misrepresentations of coverage.** Id. at 1238-39 (emphasis added).

In Beth Israel Medical Center v. Sciuto, 1993 U.S. Dist. LEXIS 9145 (S.D.N.Y. 1993), a provider filed an action against an insurance plan for breach of implied contract, negligent misrepresentation and other claims after the plan refused to pay for pre-certified services rendered to the subscriber. In remanding the case to state court, the Southern District of New York observed:

> Plaintiff brings its state law claims as a health care provider asserting a non-derivative right to restitution for services provided to a non-member of Defendant's plan as a result of the specific action of Defendant's agents. Plaintiff thus seeks recovery regardless of whether [the subscriber] was entitled to benefits under her ERISA plan. . . . **Plaintiff's claims rest solely on Defendant's alleged misrepresentation of coverage and the course of services provided and reliance on that misrepresentation.** Id. at *7-8 (emphasis added).

In McCall v. Metropolitan Life Ins. Co., 956 F. Supp. 1172 (D.N.J. 1996), the District of New Jersey recognized the "real life" impact on healthcare availability when providers are denied a cause of action against insurers based upon their misrepresentations of coverage:

10

> [The provider's] negligent misrepresentation claim is a tort action that is brought in [its] own name, and is independent of the Plan, and could have been brought even if the Plan did not exist. . . .
>
> * * *
>
> As a result, if [denied a cause of action], health care providers . . . would be stripped of the right to bring suit for tortious conduct such as that which allegedly occurred in this case, where negligent misrepresentations by private claims reviewers to health care providers induce the providers to render extended medical services and care. . . .
>
> * * *
>
> **There are also pragmatic justifications for the Court's conclusion. In determining whether a patient is eligible for coverage under a health care plan, health care providers customarily verify the patient's coverage with the insurer's agents. If coverage is confirmed, the patient is generally admitted "without further ado." The results sought by [the insurer] in this case would, by rendering . . . state-law remedies unavailable to health care providers, effectively immunize such health care managers and plan administrators from certain fraudulent and negligent misrepresentations made to health care providers. [Consequently,] critical health care decisions would be delayed while the provider determined for itself whether its medical services would be covered under the specific terms of each prospective patient's plan. In the real world, providers place reliance upon the benefit plan interpretations . . . . [If providers were denied legal recourse,] health care providers would be forced to demand payment up front or impose other costly inconveniences before admitting a patient for treatment.** Id. at 1186-87 (emphasis added).

More recently, in Alliance Health of Santa Teresa, Inc. v. National Presto Industries, Inc., 137 N.M. 537 (N.M. Ct. App. 2005), Alliance, a healthcare provider, sued National Presto (the health plan) and its administrator, asserting state law promissory estoppel and other claims arising out of defendants' promise to pay for treatment rendered to a patient admitted to Alliance. However, and similar to the case at bar, despite their promise to pay, defendants ultimately only paid partially for the treatment. Id. at 541-42.

11

In expressly concluding that ERISA does not preempt the provider's state law claims, the New Mexico appellate court held:

> [A] third-party healthcare provider is not preempted by [ERISA] from seeking payment of claims based on theories sounding in contract and promissory estoppel under state law. In short, where such a party alleges that the insurer or its agent promised payment of claims to a provider, that promise stands independently, and can support a lawsuit that ERISA does not preempt to collect the promised funds. Id. at 540-42

Relying on Memorial Hospital and other cases, some of which are discussed supra, the New Mexico court continued:

> The effect of applying state law to plans and their administrators and the effect that application might have on the interests ERISA seeks to protect by preemption -- plan terms, plan administration, and the relationships between ERISA-covered principals -- determines the extent to which such claims may trigger preemption. Although Defendants attempt to distinguish the federal cases which have held that under certain circumstances state law claims are not preempted, we are unpersuaded by these arguments. We follow the reasoning used in the federal court cases which have considered this issue in similar situations, allowing third parties to bring state law claims. See e.g., In Home Health, Inc. v. Prudential, Ins. Co., 101 F.3d 600, 602 (8th Cir. 1996) (reversing the district court's finding that a provider's "claim for negligent misrepresentation based on state law was preempted by ERISA"); The Meadows v. Employers Health Ins., 47 F.3d 1006, 1007 (9th Cir. 1995) (affirming the district court's finding that ERISA did not preempt the provider's claims for "negligent misrepresentation, estoppel, and breach of contract arising out of an inquiry concerning coverage"); Airparts Co. v. Custom Benefit Services, 28 F.3d 1062, 1063 (10th Cir. 1994) (reversing the district court's finding of ERISA preemption because it found that the claims did not "relate to an ERISA plan"); Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d 1529, 1530, 1532-33 (11th Cir. 1994) (holding that ERISA did not preempt a provider's negligent misrepresentation claim); Hospice of Metro Denver, Inc. v. Group Health Ins., 944 F.2d 752, 756 (10th Cir. 1991) (per curiam) (holding that a provider's state common law claim for promissory estoppel was not preempted by ERISA). Id. at 549.

12

Here, as set forth in NJBSC's well-pleaded state law complaint (as amended pursuant to the parties' stipulation to substitute in the proper defendant), <u>prior</u> to rendering services to each patient, plaintiff's representative contacted CGLIC and was promised that NJBSC would be paid a percentage of usual and customary fees. Specifically, with regard to services rendered to patient R.L (name withheld due to confidentiality), on July 6, 2004 NJBSC's representative spoke with "Enid," CGLIC's representative. During that communication, defendant's representative confirmed with plaintiff that R.L. had out-of-network coverage and that CGLIC would pay "70% of doctor's usual, reasonable and customary fees." Relying on this confirmation, NJBSC's surgeons rendered services to R.L on July 27, 2004. However, CGLIC subsequently paid plaintiff significantly less than the amount it agreed to pay. Similarly, with regard to services rendered to patient N.I. (name withheld due to confidentiality), on February 9, 2004, NJBSC's representative spoke with "Theresa," CGLIC's representative. During that communication, defendant's representative confirmed with plaintiff that N.I. had out-of-network coverage and that CGLIC would pay "70% of usual, reasonable and customary fees [and that] after $2,500 out of pocket expense, CGLIC will pay 100%." Relying on this confirmation, NJBSC's surgeons rendered services to N.I. on April 14, 2004. However, once again CGLIC subsequently paid plaintiff significantly less than the amount it agreed to pay. (<u>See</u> Amended Complaint at "THE PARTIES" at ¶1-2 and "SUBSTANTIVE ALLEGATIONS" at ¶¶ 3-9) (D.E. 9).

In short, the situation in this case presents the classic state law promissory estoppel, misrepresentation and unjust enrichment case that is properly brought in state court, and unfettered by ERISA preemption whatsoever. Accordingly, plaintiff's motion to remand should be granted.

13

## POINT II

## THERE IS NO DIVERSITY JURISDICTION

There is also no diversity subject matter jurisdiction because the amount in controversy is not satisfied. Pursuant to 28 U.S.C. §1332(a), the amount in controversy must be $75,000. Here, however, NJBSC seeks only $63,092.32. (Goldberg Cert. at ¶4). For this additional and independent reason, plaintiff's remand motion should be granted.

## **CONCLUSION**

For the foregoing reasons, this matter should be remanded to the Superior Court of New Jersey.

                Respectfully submitted,

                MAZIE SLATER KATZ & FREEMAN, LLC
                Attorneys for Plaintiff

                BY: _____
                      ERIC D. KATZ

DATED:   November 24, 2010

H:\EDK\Comp Neuro\CIGNA IV\Brief in support of NOM to Remand 9-17-10.doc