# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | Civil Action No.: 10-4260 (SDW) (MCA) |
| Plaintiff, | *Document Electronically Filed* |
| vs. | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

---

## DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND

---

E. Evans Wohlforth, Jr.
Timothy J. Duva
Eugene H. Kim
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
Attorneys for Defendant
Connecticut General Life Insurance Company

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL BACKGROUND .................................................................................... 4

LEGAL ARGUMENT ...................................................................................................... 11

I.      Plaintiff's Motion Must Be Denied, As Plaintiff Cannot Establish, To a Legal Certainty, That It Is Unable To Recover $75,000 In This Matter .................................. 11

II.     On the Face of the North Jersey II Complaint and Further Supported by Facts Admitted by Plaintiff or Established in Prior Proceedings, Plaintiff's Claims are Completely Preempted by ERISA ................................................................................... 14

       a.    Removal Jurisdiction Under Section 502 of ERISA ........................................... 15

             i.    Plaintiff Is Able to Bring These Claims as an ERISA Claim under Section 502 as an Assignee of its Patients ................................................ 17

             ii.   Plaintiffs Claims Are Not Supported By Any Legal Duty Independent of ERISA ............................................................................ 19

                  A.   Plaintiff admitted that the same Unjust Enrichment and Misrepresentation Claims were preempted in North Jersey I ...... 19

             iii.  Plaintiff's Claims will Require Interpretation of the Terms of the Plans ....................................................................................................... 23

III.    Plaintiff has Mis-read The *Memorial Hospital* Line Of Cases, Which Do Not Aid Plaintiff's Motion ..................................................................................................... 26

IV.   Plaintiff Is Bound By and Cannot Avoid the Effect of Its Prior Admissions ................. 29

CONCLUSION ................................................................................................................. 30

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Allis-Chalmers Corp. v. Lueck,
  471 U.S. 202 (1985) ....................................................................................... 23

Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Live Insurance Company,
  Civil Action No. 05-4389 (LHR), 2006 U.S. Dist.
  Lexis 39268 (S.D. Tex. June 13, 2006) ....................................................... 28

Archer v. Kelly,
  271 F. Supp. 2d 1320 (N.D. Okla. 2003) ..................................................... 14

B & P Holdings I, LLC v. Grand Sasso Inc.,
  114 F. App'x 461 (3d Cir. 2004) .................................................................. 12

Bell v. Preferred Life Assurance Soc'y,
  320 U.S. 238 (1943) ..................................................................................... 12

Carlisle v. Matson Lumber Co.,
  186 F. App'x 219 (3d Cir. 2006) ................................................................. 12

Charter Fairmount Inst., Inc., v. Alta Health Strategies,
  Civil Action No. 93-3258 (HJH), 1993 U.S. Dist.
  Lexis 18317 (E.D. Pa. Nov. 30, 1993) ....................................................... 26

Chase v. Shop ' N Save Warehouse Foods, Inc.,
  110 F.3d 424 (7th Cir. 1997) ....................................................................... 13

Cohn v. Petsmart, Inc.,
  281 F.3d 837 (9th Cir. 2002) ....................................................................... 13

D'Alessandro v. Hartford Life & Accident Ins. Co.,
  Civil Action No. 09-1115 (JAP), 2009 U.S. Dist.
  LEXIS 37048 (D.N.J. May 1, 2009) ........................................................... 23

DiFelice v. Aetna U.S. Healthcare,
  346 F.3d 442 (3d Cir. 2003) ....................................................................... 19

Fleck v. KDI Sylvan Pools, Inc.,
  981 F.2d 107 (3d Cir. 1992) ....................................................................... 29

Frederico v. Home Depot,
  507 F.3d 188 (3d Cir. N.J. 2007) ............................................................... 11

Geisinger South Wilkes-Barre  Med. Center v. Duda,
  Civil Action No. 3:07-888 (EMK), 2008 U.S. Dist.
  Lexis 30741 (M.D. Pa. March 31, 2008) ................................................... 26

John F. Kennedy Med. Ctr. v. Dialysis Clinic, Inc. Group Health Plan,
  Civil Action No. 09-4208 (WJM), 2009 U.S. Dist.
  LEXIS 112964 (D.N.J. Dec. 3, 2009) ......................................................... 17

Memorial Hospital Systems v. Northbrook Life Insurance Company,
    904 F.2d 236 (5th Cir. 1990)............................................................................25, 26, 27, 28

New Hampshire v. Maine,
    532 U.S. 742 (2001) ..............................................................................................29

Packard v. Provident Nat'l Bank,
    994 F.2d 1039 (3d Cir. 1993) ...............................................................................13

Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reminbursement Plan,
    388 F.3d 393 (3d Cir. 2004) ..........................................................................passim

Penny/Ohlmann/Neiman, Inc. v. Miami Valley Pension Corp.,
    399 F.3d 692 (6th Cir. 2005)...........................................................................19, 28

Pilot Life Ins. Co. v. Dedeaux,
    481 U.S. 41 (1987) .........................................................................15, 16, 25, 26

Pryzbowski v. US Healthcare, Inc.,
    245 F.3d 266 (3d Cir. 2001) ............................................................15, 17, 20, 22

Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
    81 F.3d 355 (3d Cir. 1996).....................................................................................29

Scarano v. Cent. R. Co. of N.J.,
    203 F.2d 510 (3d Cir. 1953)...................................................................................29

Spears v. Ryan,
    Civil Action No. 00-1051 (PHX), 2009 U.S. Dist.
    LEXIS 83695 (D. Ariz. Sept. 14, 2009)................................................................29

Steel Valley Auth. v. Union Switch Div.,
    809 F.2d 1006 (3d Cir. 1987) ................................................................................11

Suber v. Chrysler Corp.,
    104 F.3d 578 (3d Cir. 1997)...................................................................................13

The Meadows v. Employers Health Ins.,
    47 F.3d 1006 (9th Cir. 1995).................................................................................27

Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.,
    164 F.3d 952 (5th Cir. 1999).................................................................................27

United States v. Pelullo,
    399 F.3d 197 (3d Cir. 2005) ..................................................................................29

United Steelworkers of America v. Rawson,
    495 U.S. 362 (1990) ..............................................................................................23

Vaimakis v. United Healthcare/Oxford,
    Civil Action No. 07-5184 (HAA), 2008 U.S. Dist.
    LEXIS 60435 (D.N.J. Aug. 8, 2008)......................................................................17

Vermande v. Hyundai Motor Am., Inc.,
    352 F. Supp. 2d 195 (D. Conn. 2004) ...................................................................14

<u>Wayne Surgical Center v. Concentra Preferred Sys., Inc.</u>,
   Civil Action No. 06-928 (HAA), 2007 U.S. Dist.
   LEXIS 61137  (D.N.J. Aug. 20, 2007) ............................................................. 17, 24

<u>Werwinski v. Ford Motor Co.</u>,
   286 F.3d 661 (3d Cir. 2002) ......................................................................... 11

**Statutes**

28 U.S.C. § 1332 ....................................................................................... 1, 10

29 U.S.C. § 1132(a) ................................................................................. 15, 16

29 U.S.C. § 1132(g)(1) .................................................................................. 13

29 U.S.C. § 1144(a) ...................................................................................... 17

**Rules**

Federal Rule of Evidence 408 ......................................................................... 13

Defendant Connecticut General Life Insurance Company ("CGLIC") respectfully submits this memorandum in opposition to Plaintiff North Jersey Brain and Spine Center, Inc.'s motion to remand this case to the Superior Court of New Jersey.  For the reasons stated below, CGLIC respectfully requests that the Motion to Remand be denied as this matter was properly removed to this Court pursuant to its jurisdiction under the Employee Retirement Income Security Act ("ERISA") and pursuant to its diversity jurisdiction under 28 U.S.C. § 1332.

## PRELIMINARY STATEMENT

This lawsuit and the instant Motion to Remand mark Plaintiff's second attempt to prosecute this case in the New Jersey state courts and to avoid this Court's jurisdiction.  In <u>North Jersey Brain and Spine Center v. CIGNA Healthcare of New Jersey, et al.</u>, 09-cv-2630 (GEB) (MCA) ("North Jersey I"), the Court ruled on a motion to remand by this Plaintiff with respect to the same claims, pled in a nearly identical manner.  That case also began with a state court complaint removed by the defendants pursuant to ERISA.  The merits of Plaintiff's position have not changed, despite Plaintiff's attempts to plead around this Court's federal question jurisdiction.  Moreover, although federal jurisdiction is plain on the face of the pleading, Plaintiff's position is further diminished by material admissions Plaintiff made before the Court in North Jersey I.  Finally, diversity jurisdiction exists in this case, an additional ground mandating denial of Plaintiff's motion.

Twenty months have passed since Plaintiff first filed its Complaint in North Jersey I, and the proceedings have yet to advance to the point where CGLIC can file a responsive pleading.  The remand proceedings in North Jersey I lasted over six months, including oral argument before the Court and a futile appeal to then-District Judge Greenaway.  Having lost that battle, Plaintiff voluntarily dismissed its Complaint, rather than addressing the defendants' pending motion to dismiss.  Plaintiff then filed another Complaint in state court, which was duly removed by the defendants and is pending here as <u>North Jersey Brain & Spine Center, Inc. v. Connecticut General Life Insurance Company</u>, Civil

Action No. 10-4260 (SDW) (MCA) ("North Jersey II").[1]  Plaintiff subsequently filed the instant

motion for remand.

It is fair at this juncture to ask what drives Plaintiff to such extensive and fruitless procedural

wrangling.  The answer is obvious.  In this case (as in North Jersey I), Plaintiff disputes the amount it

was paid for treating beneficiaries of certain ERISA plans.  The Plans call for payment at a rate that is

"Usual, Customary and Reasonable" ("UCR").  Plaintiff claims that the UCR payment it received was

inadequate.  As the Court is aware, class action litigation over precisely that issue has been proceeding

in this District for several years.  See, e.g., Franco, et al. v. Connecticut General Life Insurance Co., et

al., 07-CV-6039 (SRC) (PS); Cooper v. Aetna Health Inc. PA, Case No. 07-cv-3541 (collectively, the

"UCR Litigation").  Judge Chesler has, in fact, issued a standing Order specifying that any cases that

"involve claims for reimbursement against CIGNA[2] for out-of-network services pursuant to

commercial health plans will automatically be consolidated with Franco, Case No. 07-cv-6039, for all

purposes without the necessity of future motions or orders."  (See Franco, 07-CV-6039 (SRC) (PS),

Doc. 210, p. 1) (emphasis in original).

For Plaintiff to avoid having its claims consolidated into the UCR Litigation, it must litigate

those claims in state court.  While Plaintiff's motive for avoiding the UCR Litigation is unknown, it

clearly wishes to pursue its claims separately and in the state forum and to do so at any cost.  This is a

wholly improper motive for seeking remand of a case that has been properly removed to this Court.

---

[1] In an attempt to avoid confusion, this memorandum will refer to the original Complaint in the North Jersey I matter as the "North Jersey I Complaint."  The pleading that was removed in this second matter, which is currently pending, will be called the "North Jersey II Complaint."  Under the law discussed below, however, the North Jersey II Complaint is the proper focus of this remand motion because this is the Complaint that was actually removed.  Subsequent to the removal of the North Jersey II Complaint, Plaintiff filed an Amended Complaint, substituting a CIGNA affiliate, CGLIC as the proper defendant.  The substitution did not affect the merits of this remand motion, as CGLIC is still a diverse defendant and Plaintiff's substantive allegations remained the same.  The last, currently operative complaint will be referred to as the "North Jersey II (Amended) Complaint."
[2] Judge Chesler's June 17, 2009 Order defined "CIGNA" as including CGLIC, as well as 'CIGNA Corporation, CIGNA Health Corporation, Connecticut General Corporation, CIGNA Behavioral Health, Inc. and CIGNA Dental Health."  (See Franco, 07-CV-6039 (SRC) (PS), Doc. 210, p. 1).

The Complaint, now on its third iteration counting the pleading in North Jersey I, was carefully drafted.  It listed, however, two patients, R.L. and N.I. as examples of a larger, unspecified group of patients for which Plaintiff was making a claim.  Now, in support of its motion for remand, Plaintiff has attempted to narrow its claims to only two patients, so as to bring its claims below $75,000 and foil the Court's exercise of diversity jurisdiction, which provides a separate ground for removal.

The lengths to which Plaintiff will go to avoid proceeding in this Court must color the bona fides of this motion.  There is no serious question that the UCR Litigation is properly before this Court as an ERISA case and the merits of Plaintiff's arguments against federal question jurisdiction in this case are no more valid now than in New Jersey I.  Plaintiff's 11th-hour attempt to limit its claims to only two patients is legally ineffective and, at any rate, absurd when read in context with the operative pleading.  As discussed below, it is basic, procedural law that the analysis of the amount in controversy requirement for the purposes of evaluating diversity jurisdiction must focus exclusively on the state court pleading at the time of removal.  Plaintiff cannot retroactively limit its claims to only two patients when the Complaint itself says that those patients are only examples of a larger set of Plan beneficiaries.  In any event, Plaintiff would simply have the Court overlook its claims for punitive damages and attorney's fees, either of which would inevitably take the amount in controversy above the required minimum.

Quite apart from these tactical implications, Plaintiff's attempts to escape the federal question jurisdiction of this Court are no more valid than they were in North Jersey I.  In the North Jersey II Complaint, Plaintiff alleges promissory estoppel, unjust enrichment and negligent and intentional misrepresentation.  The example patients, R.L. and N.I., were among the group of Plan members involved with the North Jersey I case and three of the four causes of action alleged in this matter, unjust enrichment and negligent and intentional misrepresentation, were pled in North Jersey I.  In fact, Plaintiff's counsel admitted in open Court that these claims were preempted and that Plaintiff was the

assignee of its patients' claims for Plan benefits.  Plaintiff's promissory estoppel claim fares no better, because the gravamen of the dispute is the parties' disagreement over the interpretation of a Plan term, i.e., what will constitute a UCR payment.  The Complaint does not even allege a false statement or a broken promise.  It alleges a difference of opinion over a Plan term.

Of course, the Court need not reach the issue of ERISA preemption at all, because remand is impossible given the Court's indisputable diversity jurisdiction.  Lastly, even if the Court were to find that the promissory estoppel claim is not pre-empted (and that is the only claim Plaintiff has not already conceded is preempted) and that diversity jurisdiction was lacking, that claim would properly remain in this Court pursuant to the Court's authority to exercise supplemental jurisdiction.

Thus, there are numerous, separate grounds on which this motion to remand must be denied.  The tactical impetus for the motion is patent.  Plaintiff must either go forward with its claims in this Court, or abandon them as it appeared willing to do when it voluntarily dismissed North Jersey I.  Remand to the New Jersey Superior Court is simply not an option available to Plaintiff.

## **PROCEDURAL BACKGROUND**

The procedural history of this matter is complicated, but relevant to the disposition of this motion.  The claims at issue in this case were originally brought before the Court in the North Jersey I Complaint, filed in the Superior Court of New Jersey and dated April 10, 2009.  That Complaint alleged that "CIGNA[3] operates, controls and/or administers managed healthcare or related insurance plans and claims submitted by its subscribers and/or their dependents.  At all relevant times, CIGNA provided its subscribers/dependents -- patients of NJBSC -- with 'out-of-network' benefits . . . ." (North Jersey I Compl., North Jersey I Docket, Doc. 1-1, at 2, ¶ 1.)  Plaintiff identified itself as an out-

---

[3] In the North Jersey I Complaint and the original North Jersey II Complaint, Plaintiff named CIGNA Corporation and CIGNA Healthcare of New Jersey, Inc. and so referenced these parties as "CIGNA. By agreement between the parties, in the North Jersey II (Amended) Complaint, Plaintiff named only Connecticut General Life Insurance Company, the proper party and an affiliate of the original defendants.

4

of-network medical provider, i.e. a provider with no separate agreement with CIGNA.  (Id.).  The

North Jersey I Complaint alleged that Plaintiff had wrongly been denied benefits due its patients and

pled four state-law counts for relief.  Count One alleged unjust enrichment.  (Id. at 4-5). Count Two

alleged violation of certain New Jersey state regulations.  (Id. at 5-6).  Count Three alleged violations

of certain New Jersey statutes.  (Id. at 6-8).  Count Four alleged misrepresentation, both intentional and

negligent.  (Id. at 9-10).

The North Jersey I Complaint specifically pled that the defendants paid benefits at a rate less

then was owed under for "Usual, Customary and Reasonable" ("UCR") charges for Plaintiff's services.

In Count Four, Plaintiff stated:

> Despite its pre-authorization of treatment and pre-certification of
> coverage, defendant intentionally refused and has continued to refuse to
> pay the subject claims appropriately or at all and, in addition,
> intentionally and/or negligently used and and/or manipulated data that
> understated the UCR fees for the medical services provided by NJBSC.  .
> . .
> . . . Plaintiff reasonably expected and relied upon what it believed to be
> defendant's honest representations that the plaintiff would be properly
> compensated in accordance with the pre-certification of coverage.

(Id. at 9, ¶¶ 2-3).

CIGNA brought a motion to dismiss on the ground the state law claims were preempted by

ERISA.  (See North Jersey I Docket, Doc. 7).  In response, Plaintiff moved to remand, taking the

position that its state law claims depended on duties independent of ERISA.  (See North Jersey I

Docket, Doc. 9).  While these motions were pending, the parties exchanged certain information to

facilitate discussion regarding the merits of the claims and to cure the absence of specificity in the

original pleading regarding the identity of the Plans involved.  Specifically, Plaintiff produced a

spreadsheet titled "CIGNA CLAIMS UNPAID OR NOT PROPERLY PAID," a true and correct copy

of which is attached to the Certification of E. Evans Wohlforth Jr. (the "Wohlforth Cert.") as Exhibit A

(the "Claims Spreadsheet").[4]   The Claims Spreadsheet included information on approximately 109 claims for services rendered to 28 different patients, totaling over $900,000.  Two of the individual claimants listed on that spreadsheet have the same name as individuals identified in the current North Jersey II Complaint, as well as the same dates of service.

As the Court will recall, the remand proceedings in North Jersey I were extensive.  The principle issue in dispute was whether the facts alleged by Plaintiff supported the Court's exercise of ERISA removal jurisdiction in accordance with the factors set out in Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004).  Pascack Valley Hospital provides that a plaintiff's state law claims are completely preempted by ERISA and thus properly removable to federal court where (i) the plaintiff could have brought the claims as ERISA claims; and (ii) no other independent duty would support the claims.  (See discussion infra.)  As the Court knows, the first factor is usually satisfied where a medical provider has received an assignment of Plan benefits from its patients.  The CIGNA defendant provided a certification from its record keeper indicating that there had been such an assignment.  (See Decl. of June Ann Hendrick, North Jersey I Docket, Doc. 13-1, ¶3.)  In the course of oral argument, Plaintiff conceded that point.  (January 11, 2009 Report & Recommendation, North Jersey I Docket, Doc. 17 at 4) ("Here at oral argument, Plaintiff conceded the existence of a valid assignment of claims from the patient plan participants. . . . [T]hus, the first prong of the Pascack complete preemption test has been met."); see also Transcript of the November 18, 2009 Hearing on Motion to Remand ("Hr'g Tr."), a true and correct copy of which is attached to the Wohlforth Cert. as Exhibit B, at 4:18-20)  (THE COURT:  "Is plaintiff disputing that a valid assignment of the patient's claims exists?  MR. KATZ:  No.  I'm sure there is a valid assignment.") (emphasis added).

---

[4]  The Claims Spreadsheet has been redacted to preserve the privacy of Plaintiff's patients. Specifically, all but the first and last initials of those patients' names have been redacted.  The patients' insurance identification numbers have been redacted in their entirety.

Plaintiff likewise expressly conceded that its unjust enrichment claim and misrepresentation claims were preempted under ERISA.

> COURT: . . . [L]et's talk about unjust enrichment and misrepresentation. Are those at issue -- is your position that those claims are preempted under ERISA or not?
>
> MR. KATZ: Those claims would be preempted under ERISA.

Wohlforth Cert., Ex. B at 5:7-12. Finally, Plaintiff's counsel conceded that, because those two claims were preempted (as Plaintiff had received an assignment of its patients' right to benefits under their plans and because no duty separate from ERISA supported the claims), then the Court could exercise supplemental jurisdiction over the balance of Plaintiff's claims:

> COURT: Okay. If those claims are preempted under ERISA, doesn't that pull it from my discretion to the ability to say, the claims are preempted, I'm going to -- I'm going to maintain jurisdiction over the whole case?
>
> MR. KATZ: You mean under the doctrine of supplemental jurisdiction?
>
> THE COURT: Yes.
>
> MR. KATZ: Yes, certainly Your Honor could do that.

Id. at 5:13-21.

Judge Arleo denied the motion to remand in a nine-page Letter Opinion. (See North Jersey I Docket, Doc. 17). Due to the Plaintiff's several concessions, the Letter Opinion focused exclusively on whether Plaintiff's state regulatory and statutory claims stated violations of duties separate from CIGNA's duties under ERISA. Plaintiff objected to Judge Arleo's Report and Recommendation. (See North Jersey I Docket, Doc. 18). Then-District Judge Greenaway overruled Plaintiff's objection and adopted the Report and Recommendation as the decision of the Court. (See North Jersey I Docket, Doc. 26).

Rather than proceed with the matter in federal court, Plaintiff then voluntarily dismissed North Jersey I by filing a Notice of Voluntary Dismissal on March 17, 2010. (See North Jersey I Docket, Doc. 29).

On June 28, 2010, the case began all over again when Plaintiff filed the North Jersey II Complaint in the Superior Court of New Jersey, Bergen County, Law Division. As in North Jersey I, Plaintiff named CIGNA Corporation and CIGNA Healthcare of New Jersey, Inc. as defendants (collectively, the "CIGNA Defendants"). Again, Plaintiff alleged that it was an out-of-network medical services provider. Plaintiff also alleged, once again, that the CIGNA Defendants provided their plan beneficiaries with out-of-network benefits and that the CIGNA Defendants failed to pay amounts due as "Usual, Customary and Reasonable" reimbursement for treatment of its Plan members. (North Jersey II Compl., Doc. 1-7 at 2, ¶¶ 1, 3.)

Like its predecessor, the North Jersey II Complaint named an unspecified number of Plan beneficiaries that Plaintiff had treated. In its new pleading, however, Plaintiff also provided two examples, patients identified by their initials as "R.L." and "N.I." Plaintiff also pled the dates on which it allegedly treated R.L. and N.I. It is clear from the Complaint, however, that Plaintiff does not merely seek relief with regard to patients R.L. and N.I. In fact, the North Jersey II Complaint expressly states that R.L. and N.I. are listed "[j]ust by way of illustrative example, and without limitation as to patients, dates and services . . . ." (North Jersey II Compl., Doc. 1-7 at 2, ¶ 3 (emphasis added).)

As before, the CIGNA Defendants removed the North Jersey II Complaint to this Court. (See Doc. 1). The Notice of Removal cited this Court's federal question removal jurisdiction under the complete preemption doctrine of ERISA, as well as the Court's diversity jurisdiction. The CIGNA Defendants argued that Defendant CIGNA Corporation was a foreign corporation, and that while CIGNA Healthcare of New Jersey, Inc. resided in New Jersey, it had been fraudulently joined and was thus properly disregarded for purposes of analyzing diversity jurisdiction.[5] Because Plaintiff

---

[5] CIGNA Healthcare of New Jersey, Inc. is an entity that deals with Health Maintenance Organizations. Therefore, it is logically precluded from administering out-of-network medical benefits and could not have been a properly named defendant. (See North Jersey II Notice of Removal, Doc. 1, ¶ 24).

previously represented that its claims totaled over $900,000 (i.e., during the pendency of North Jersey I), (see Claims Spreadsheet, Wohlforth Cert., Ex. A), the amount in controversy requirement of $75,000 was obviously satisfied.

The parties subsequently engaged in negotiations to address the fact that CIGNA Corporation and CIGNA Healthcare of New Jersey had been erroneously named as defendants. Plaintiff provided Defendants with the full names of the example Plan members, R.L. and N.I., so as to permit Defendants to identify the Plans under which those patients were covered, as well as the entity(ies) responsible for insuring and/or administering those plans. The parties ultimately entered into a stipulation in which the proper defendant, CIGNA-affiliate CGLIC, was identified. The original, CIGNA Defendants were dismissed and Plaintiff was given leave to file an amended pleading naming CGLIC as the lone defendant.

Plaintiff filed the North Jersey II (Amended) Complaint, its current, operative pleading, on November 12, 2010. (Doc. 9). It is, in all material respects, identical to the North Jersey II Complaint. The only difference is that CGLIC has been substituted for the previous CIGNA Defendants. (Compare Doc. 1-7, with Doc. 9). Plaintiff still names patients R.L. and N.I. "[j]ust by way of illustrative example and without limitation as to patients, dates and services . . .." (North Jersey II (Amended) Compl., Doc. 9, ¶ 5).

Plaintiff does not dispute that the lone defendant, CGLIC, which has its principal place of business in Pennsylvania, is not a citizen of New Jersey for purposes of diversity jurisdiction. Moreover, both R.L. and N.I. appear on the list of Plan beneficiaries provided by Plaintiff during the course North Jersey I (those patients' identities and dates of service match those alleged in the North Jersey II Complaint). Considering that the North Jersey II (Amended) Complaint expressly states that Plaintiff's action is not limited to claims pertaining to R.L. and N.I., it seems clear that the universe of claims at issue in North Jersey II is the very same body of claims in controversy in North Jersey I. As

discussed more fully in Section I, below, therefore, no fair basis for debate exists -- both the diversity of citizenship and the amount of controversy requirements are met on the face of either the North Jersey II or the North Jersey II (Amended) Complaints.  Of course, the case for ERISA preemption (and thus federal question jurisdiction) over Plaintiff's claims remains as strong as it was in North Jersey I, when Plaintiff conceded the point.

In support of its motion for remand, Plaintiff provided the certification of its billing manager, Lee Goldberg, who averred (1) that Plaintiff merely seeks to recover benefits owed with regard to patients R.L. and N.I.; and (2) that Plaintiff's claims concerning those patients total $63,092.32.  (See Doc. 11-2).  Plaintiff attempts to use the Goldberg Certification to show that its claims in this matter do not meet the threshold amount necessary to trigger diversity jurisdiction.  As discussed below, however, the Goldberg Certification is ineffective to limit the amount in controversy appearing on the face of the North Jersey II Complaint for the purposes of a diversity jurisdiction analysis.  In any event, the Goldberg Certification fails to account for the other claims pled in the complaint, for which R.L. and N.I are given as merely "illustrative examples and without limitation as to patients, dates and services".  (See North Jersey II Compl., Doc. 1-7, ¶ 5).  Nor does the Goldberg Certification mention amounts claimed in the North Jersey II and North Jersey II (Amended) Complaints for punitive damages, attorneys fees, costs and interest (running on some of the claims since 2004), all of which factor in to the "amount in controversy" analysis.  (Id. at pp. 9-10).  Finally, the Certification fails to acknowledge representations that Plaintiff made during the pendency of North Jersey I, in which Plaintiff assessed its claims as exceeding $900,000.00.  See Claims Spreadsheet, Wohlforth Ex. A.  The foregoing supports only one conclusion:  the Court may exercise diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

## <u>LEGAL ARGUMENT</u>

**I.     Plaintiff's Motion Must Be Denied, As Plaintiff Cannot Establish, To a Legal
Certainty, That It Is Unable To Recover $75,000 In This Matter**

In <u>Frederico v. Home Depot</u>, 507 F.3d 188 (3d Cir. N.J. 2007), the United States Court of

Appeals for the Third Circuit provided an in-depth analysis of the standards applicable in diversity

actions in which the parties dispute whether the jurisdictional "amount in controversy" requirement has

been satisfied.  Where "the plaintiff has not specifically averred in the complaint that the amount in

controversy is less than the jurisdictional minimum . . . the case must be remanded if it appears to a

legal certainty that the plaintiff <u>cannot</u> recover the jurisdictional amount."  <u>Id.</u> at 197 (emphasis in

original).  Naturally, in such cases, the party <u>challenging</u> federal subject matter jurisdiction bears the

burden of proof.  <u>Id.</u> at 196.

The <u>Frederico</u> court recognized that both the standard and burden of proof will shift depending

on the allegations contained with the plaintiff's pleading.  Specifically, "where the plaintiff expressly

limits her claim below the jurisdictional amount <u>as a precise statement in the complaint</u>, . . . the

<u>proponent</u> of the federal subject matter jurisdiction . . . must show, to a legal certainty, that the amount

in controversy <u>exceeds</u> the statutory threshold."  <u>Id.</u> at 196 (first emphasis added).  That is clearly not

the case here, as the North Jersey II Complaint does not contain any "precise statement" regarding the

amount in controversy and, in fact, is altogether silent as to the amount of damages at issue.  (<u>See</u>

<u>generally</u> North Jersey II Compl, Doc. 1-7).  Thus, to divest the Court of subject matter jurisdiction,

Plaintiff must demonstrate, to a "legal certainty," that it cannot recover more than $75,000 in this

action.  <u>See</u> <u>Frederico</u>, 507 F.3d at 197.

Within the Third Circuit, "[a] district court's determination as to the amount in controversy

must be based on the 'plaintiff's complaint at the time the petition for removal was filed.'"  <u>Werwinski</u>

<u>v. Ford Motor Co.</u>, 286 F.3d 661, 666 (3d Cir. 2002) (quoting <u>Steel Valley Auth. v. Union Switch Div.</u>,

809 F.2d 1006, 1010 (3d Cir. 1987)); <u>Carlisle v. Matson Lumber Co.</u>, 186 F. App'x 219, 225 (3d Cir.

11

2006) ("the amount in controversy is determined as of the time the complaint is filed.").  Therefore, with very few exceptions (none of which apply here), the jurisdictional amount is set once a matter is either commenced in or removed to federal court, and "subsequent events cannot divest the court of jurisdiction." Carlisle, 186 F. App'x at 225; B & P Holdings I, LLC v. Grand Sasso Inc., 114 F. App'x 461, 464 (3d Cir. 2004) ("Events subsequent to the filing of the complaint, or its removal to federal court if filed in state court, 'that reduce the amount in controversy below the statutory minimum do not require dismissal.'") (internal citations omitted).  The Court's analysis in this case is thus properly directed to the allegations of the North Jersey II Complaint, and any affidavits or other pleadings filed by Plaintiff thereafter are of no moment.

Plaintiff's attempt to limit the scope of this litigation to Plan benefits for patients N.I. and R.L. through the Certification of it billing manager is, therefore, unavailing as a matter of law.  The North Jersey II Complaint identified those patients as mere exemplars of its claims -- Plaintiff explicitly stated that its claims were not limited to those individuals.  (Compl., Doc. 1-7, p. 3, ¶ 3) ("Just by way of illustrative example and without limitation as to patients, dates and services, with regard to services rendered to patient R.L. . . .") (emphasis added).  If the Plan benefits claimed for the two patients R.L. and N.I total $63,092.32, then even one additional patient would push the amount in controversy over the $75,000 requirement.  R.L. and N.I. are specifically pled as "illustrative example[s]", which can only be read to include at least one more and, more naturally, many more such patients.

In any event, even if the billing manager's Certification were properly considered, and even if that Certification could effectively revise the North Jersey II Complaint to restrict Plaintiff's claims to patients R.L. and N.I., the Certification does not account for the punitive damages Plaintiff seeks in Count Four.  It is universally settled law that punitive damages are properly counted as part of the amount in controversy.  See, e.g., Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered

12

to the extent claimed in determining jurisdictional amount."); Packard v. Provident Nat'l Bank, 994

F.2d 1039, 1046 (3d Cir. 1993) ("When both actual and punitive damages are recoverable, punitive

damages are properly considered in determining whether the jurisdictional amount has been

satisfied.").  It is not necessary to calculate what the upper limit of a punitive damages award might be

in this matter to conclude that any such award, when applied in conjunction with the approximately

$63,000 sought with regard to patients N.I and R.L, would drive the amount in controversy beyond

$75,000.

      Additionally, where attorney's fees are provided for by statute, as is the case here, such fees

must be included in the amount in controversy.  See Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d

Cir. 1997) ("attorney's fees are necessarily part of the amount in controversy if such fees are available

to successful plaintiffs under the statutory cause of action").  For reasons discussed elsewhere and as

will be established in Defendant's motion to dismiss, there is no doubt that this case is subject to

ERISA and that statute provides for fees in certain cases.  See 29 U.S.C. § 1132(g)(1).  Plaintiff's

Complaint demands those fees.  For this additional reason, the amount in controversy is thus certainly

greater than $75,000.

      Yet another argument dooms Plaintiff's attempts to escape diversity jurisdiction in this Court.

Plaintiff has already admitted that the true amount in controversy dwarfs the jurisdictional requirement

-exceeding that threshold by over $850,000.  As previously recounted, during the pendency of North

Jersey I, Plaintiff produced the Claims Spreadsheet.  Plaintiff characterized the Claims Spreadsheet as

identifying all claims currently in dispute as of June 10, 2009.  See Wohlforth Cert., Ex. A.[6]  The

---

[6] Plaintiff provided its spreadsheet under cover of a letter stating that it was subject to Federal Rule of
Evidence 408.  It is far from clear that Rule 408 would apply to this statement, but it is in any event
widely recognized that the federal courts may consider purported Rule 408 statements when
calculating the amount in controversy for diversity jurisdictional purposes. Cohn v. Petsmart, Inc., 281
F.3d 837, 840 n.3 (9th Cir. 2002); Chase v. Shop ' N Save Warehouse Foods, Inc., 110 F.3d 424, 428-
30 (7th Cir. 1997) (plaintiff's settlement offer is properly consulted in determining "plaintiff's
assessment of the value of her case"); Vermande v. Hyundai Motor Am., Inc., 352 F. Supp. 2d 195,

Claims Spreadsheet does, in fact, include the claims for services provided to "N.I." and "R.L." on

April 14, 2004 and July 27, 2004, respectively, as referenced in the North Jersey II Complaint.

(Compare Claims Spreadsheet, Wohlforth Cert., Ex. A, at 4, rows 3-6 and p. 5, rows 13-16 with North

Jersey II Compl., Doc. 1-7, p. 3, ¶ 3).  Far from being limited to those claims, however, the Claims

Spreadsheet includes a total of one-hundred and nine (109) distinct claims, totaling $926,501.16, for

services allegedly provided to twenty-eight (28) different patients.  See Wohlforth Cert., Ex. A, at 4-7.

Of course, those claims are obviously what Plaintiff meant to pursue when it pled that N.I and R.L.

were merely examples of a larger set of claims.

In its increasingly desperate attempts to avoid this Court's diversity jurisdiction, Plaintiff would

now have the world forget that it once represented that its claims were worth more than $900,000.  To

accomplish that sleight-of-hand, Plaintiff asks the Court to read claims specifically pled as examples of

a larger set of Plan beneficiaries as the total universe of claims.  Even now, Plaintiff asserts it is

claiming $63,092 in compensatory damages -- 84% of the amount in controversy requirement -- but

Plaintiff would have the Court overlook its claim for punitive damages and attorneys' fees.  Plaintiff's

motion to remand must be denied, as this Court plainly has diversity jurisdiction over this case.

## II.     On the Face of the North Jersey II Complaint and Further Supported by Facts Admitted by Plaintiff or Established in Prior Proceedings, Plaintiff's Claims are Completely Preempted by ERISA

The North Jersey II Complaint alleges causes of action that have been found preempted under

ERISA by countless courts over the years.  Moreover, this Court does not write on a clean slate.

Plaintiff has already admitted in North Jersey I that three of the state law causes of action pled in the

North Jersey II (Amended) Complaint were preempted when they were pled in the previous action, and

---

201-202 (D. Conn. 2004) ("[M]ost courts have sensibly concluded that Rule 408 does not prevent them from considering a settlement demand for purposes of assessing the amount in controversy."); Archer v. Kelly, 271 F. Supp. 2d 1320, 1322-23 (N.D. Okla. 2003) ("another acceptable purpose [for purported Rule 408 communication] is to show that the amount in controversy exceeds $ 75,000 and, together with complete diversity of the parties, to establish removal jurisdiction").

that Plaintiff has standing to sue as an ERISA beneficiary by virtue of assignments received from its

patients.  The Court relied on those admissions when it denied Plaintiff's motion for remand in North

Jersey I.  Plaintiff's reliance on a handful of older cases from other Circuits is misplaced; those cases

do not actually support its position.  Instead, those cases concern a narrow set of circumstances

involving representations regarding the very existence of coverage rather than the run-of-the-mill issue

at stake here - a dispute over the meaning of a specific Plan term.  In short, despite Plaintiff's best

efforts to the contrary, this is an ERISA case properly removed to this Court.

     **a.**     **<u>Removal Jurisdiction Under Section 502 of ERISA</u>**

     Section 502(a), of ERISA, 29 U.S.C. § 1132(a), creates a civil cause of action to enforce the

terms of ERISA Plans.  The United States Supreme Court has addressed the scope of the complete

preemption doctrine under Section 502, holding that:

> the detailed provisions of § 502(a) set forth a comprehensive civil
> enforcement scheme that represents a careful balancing of the need for
> prompt and fair claims settlement procedures against the public interest
> in encouraging the formation of employee benefit plans.  The policy
> choices reflected in the inclusion of certain remedies and the exclusion
> of others under the federal scheme would be completely undermined if
> ERISA-plan participants and beneficiaries were free to obtain remedies
> under state law that Congress rejected in ERISA.

<u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 54 (1987).  It is obvious at the outset that if a provider is

permitted to sue a plan administrator directly under state law to obtain additional Plan benefits in the

context of a dispute over the meaning of a Plan term, it would constitute a major and significant

impingement on the "comprehensive civil enforcement scheme" recognized in  <u>Pilot Life</u>.

     Complete preemption under Section 502 requires the Court to look to the substance of putative

state-law claims to decide whether they fall within ERISA's "comprehensive enforcement scheme"

and thus may be removed regardless of well-pleaded complaint rule.  <u>Pryzbowski v. US Healthcare,

Inc.</u>, 245 F.3d 266, 274 (3d Cir. 2001) (federal courts must look "beyond the face of the complaint to

determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of

state law") (internal quotations omitted).  The Third Circuit set forth a two-part analysis in Pascack

Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004).

Under that test, a claim pled under state law terms is removable as a federal ERISA question under

Section 502 if (i) the plaintiff could have brought the claim under ERISA and (ii) the claim is not

independent of the claim for benefits.  Id. at 400.

      Section 502(a) sets forth who may utilize ERISA's civil enforcement mechanism:

> A civil action may be brought --
>
> (1) by a participant or beneficiary …
>
> > (B) to recover benefits due to him under the terms of his plan, to
> > enforce his rights under the terms of the plan, or to clarify his
> > rights to future benefits under the terms of the plan . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or
> practice which violates any provision of this title or the terms of the plan,
> or (B) to obtain other appropriate equitable relief (i) to redress such
> violations or (ii) to enforce any provisions of this title or the terms of the
> plan.

29 U.S.C. § 1132(a) (emphasis added).  In Pilot Life, the Supreme Court wrote that:

> "The six carefully integrated civil enforcement provisions found in
> § 502(a) of the statute as finally enacted . . . provide strong evidence that
> Congress did not intend to authorize other remedies that it simply forgot
> to incorporate expressly."
>
> The deliberate care with which ERISA's civil enforcement remedies
> were drafted and the balancing of policies embodied in its choice of
> remedies argue strongly for the conclusion that ERISA's civil
> enforcement remedies were intended to be exclusive.  This conclusion is
> fully confirmed by the legislative history of the civil enforcement
> provision.

481 U.S. at 54 (internal citations omitted) (emphasis added).

      ERISA contains two statutory provisions that preempt state law causes of action, only one of

which is at issue in this motion.  That provision, Section 502(a), 29 U.S.C. § 1132(a), sets forth a civil

enforcement scheme that forecloses and supplants any state law claim that falls within its zone of

influence.  This balancing is, of course, the supreme law of the land, displacing any state law that

would either expand or contract the rights and liabilities of the various parties.

ERISA contains a second preemption provision, Section 514(a), 29 U.S.C. § 1144(a), which effectuates what is known as "express" or "conflict preemption." Section 514 preempts "any and all state laws" that "relate to any employee benefit plan." Id. Section 514 is concerned with conflict preemption, rather than the complete preemption doctrine of Section 502 (discussed immediately supra). It is Section 502 that supports removal jurisdiction in this Court. Pascack, 388 F.3d at 400. Rulings under Section 514 finding preemption are relevant here, however, because a state law cause of action that "relates to" an ERISA plan necessarily will interfere with ERISA's comprehensive enforcement scheme under Section 502 and thus be completely preempted and within this Court's removal jurisdiction.

### i.   Plaintiff Is Able to Bring These Claims as an ERISA Claim under Section 502 as an Assignee of its Patients

Under Section 502, plan participants and beneficiaries may sue for benefits, while participants, beneficiaries and fiduciaries may sue for equitable relief. Vaimakis v. United Healthcare/Oxford, Civil Action No. 07-5184 (HAA), 2008 U.S. Dist. LEXIS 60435 at *8 (D.N.J. Aug. 8, 2008) ("By its terms, only a participant or beneficiary of an ERISA plan may bring suit to recover benefits due under an ERISA plan."). A provider, however, also has standing and may bring a claim where the plan participant or beneficiary has assigned to a provider that individual's rights to benefits under the plan. Wayne Surgical Center v. Concentra Preferred Sys., Inc., Civil Action No. 06-928 (HAA), 2007 U.S. Dist. LEXIS 61137 at *10 (D.N.J. Aug. 20, 2007); accord John F. Kennedy Med. Ctr. v. Dialysis Clinic, Inc. Group Health Plan, Civil Action No. 09-4208 (WJM), 2009 U.S. Dist. LEXIS 112964, *7 n.2 (D.N.J. Dec. 3, 2009) (Pascack Valley has supports derivative standing for a health care provider under ERISA § 502(a)(2) where the provider has received a valid assignment from its patient.).

Plaintiff has approached the issue of assignment "artfully," as Pryzbowski put it. 245 F.3d at 274. In the North Jersey I Complaint, Plaintiff avoided making a clear statement of whether it had received assignments of its patients' right to Plan benefits. That pleading stated that "the claims in this

lawsuit do not arise under ERISA, do not arise under any assignment of benefits and do not arise under any purported federal common law doctrine." (North Jersey I Compl., North Jersey I Docket, Doc. 1-1 at 3 ¶ 7.) At oral argument, however, Plaintiff conceded that all of the claims it was raising were actually assigned to it by the Plan beneficiaries and the Court so found. (January 11, 2009 Report and Recommendation, North Jersey I Docket, Doc. 17, at 4) Those assignments served as a basis for the Court's ruling that Plaintiff's claims were subject to complete preemption. (Id.)

The North Jersey II Complaint simply ignores the issue, making no statement one way or the other regarding the existence of assignments. Its brief on this Motion echoes the North Jersey I Complaint, however, stating "[h]ere NJBSC brings this action on its own, not as an assignee of benefits from CGLIC's members or its dependents." (Remand Brf., Doc. 11-3 at 3).

It is not clear how Plaintiff's position is any stronger under the instant pleading than it was in North Jersey Brain I. It stands as an admitted fact that the claims in the earlier pleading were assigned to Plaintiff by the relevant Plan members and it is established that at least some of those claims, those concerning patients N.I. and R.L., are identical to those asserted in the earlier action. (Compare Claims Spreadsheet, Wohlforth Cert., Ex. A with North Jersey II Compl., Doc. 1-7, ¶ 5). Plaintiff now seeks to limit its Complaint to seek relief concerning Plan beneficiaries N.I. and R.L. only, an attempt that, as discussed above, is completely irrelevant for the purposes of this motion. Taking Plaintiff at face value, however, it appears that both of those beneficiaries assigned their claims to Plaintiff and the question of whether Plaintiff can bring its claims under ERISA is thus at an end. Moreover, it is a fair inference that the balance of Plaintiff's claims, for which the pleading states N.I and R.L. are only examples, are likewise the same as those at issue in North Jersey I, for which Plaintiff received assignments. (See Decl. of June Ann Hendrick, North Jersey I Docket, Doc. 13-1, ¶3) (stating that the relevant records indicated that Plaintiff received an assignment of benefits from 24 of the 28 patients at issue).

18

In either case, the first prong of the <u>Pascack</u> test is satisfied -- Plaintiff can bring these claims under ERISA as assignee of the claims of Plan beneficiaries for Plan benefits.  The question then becomes, under the second prong, whether some independent legal duty would support the claims or whether they are in fact ERISA claims in state law clothing.

> **ii.    Plaintiffs Claims Are Not Supported By Any Legal Duty Independent of ERISA**

>> **A.    Plaintiff admitted that the same Unjust Enrichment and Misrepresentation Claims were preempted in North Jersey I**

As noted, Counts One, Three and Four of the North Jersey II Complaint allege state common law claims for unjust enrichment and both negligent and intentional misrepresentation.  Counts One and Four of the North Jersey I Complaint likewise pled unjust enrichment and misrepresentation (both negligent and intentional).  (North Jersey I Cmplt., North Jersey I Docket, Doc. 1-1 at 8 ¶ 2.).  Here again, Plaintiff's remand motion is barred by its own admissions before the Court in North Jersey I. As quoted above, Plaintiff clearly and without the slightest equivocation conceded in open Court that these causes of action were preempted by ERISA.  (Hr'g Tr., Wohlforth Cert. Ex. B. at 5:5-12.)  The Court noted these concessions in its Opinion and based its ruling in part on them.  (January 11, 2009 Report and Recommendation, North Jersey I Docket, Doc. 17, at 4).

Regardless of Plaintiff's earlier concessions, numerous cases have found such causes of action to be subject to complete ERISA preemption.  As the Sixth Circuit observed in <u>Penny/Ohlmann/Neiman, Inc. v. Miami Valley Pension Corp.</u>, 399 F.3d 692, 703-04 (6th Cir. 2005), a claim based upon misrepresentation against a bank serving as a fiduciary (like CIGNA here), "would result in the use of state tort law as an end-run around ERISA's exclusive enforcement mechanism." Plaintiff pleads its misrepresentation claim alternatively as either intentional or negligent misrepresentation.  (North Jersey II Compl., Doc. 1-7 at 7, 9-10 ).  The Third Circuit addressed allegations of negligence in the context of ERISA benefits in <u>DiFelice v. Aetna U.S. Healthcare</u>, 346 F.3d 442, 452 (3d Cir. 2003), writing:  "Because under our most recent controlling precedent,

<u>Pryzbowski</u>, DiFelice's claim that Aetna was negligent in determining that the special tube was 'medically necessary' could have been the subject of a suit under section 502(a) for benefits due under the Plan, his claim is preempted by ERISA." <u>Id.</u> at 464.

In the North Jersey II Complaint, Plaintiff has alleged, <u>inter</u> <u>alia</u>, that "in each instance, prior to [Plaintiff] rendering services, CIGNA agreed to directly compensate plaintiff the usual, customary and reasonable fee ("UCR") for the services provided . . .." North Jersey II Compl., Doc. 1-7 at 2 ¶ 3. Plaintiff also alleges how UCR should be interpreted:

> UCR is the fee that "out-of-network" providers, like the plaintiff, normally charge to their patients in the free market . . . . Moreover, UCR means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

(<u>Id.</u> at 3 ¶ 4.)  Finally, Plaintiff alleges:

> The net effect of CIGNA's intentional and improper acts in refusing to make correct payment to NJBSC, despite defendant's representations to the contrary, was to force NJSC to suffer the loss by accepting less than the plaintiff was entitled to receive for the medical services it performed.

(<u>Id.</u> at 3 ¶ 5.)  This case is unavoidably about a dispute over the meaning of "UCR".  UCR is, of course, a term of the ERISA plans at issue here.  (<u>See</u> "Welfare Plan for Employees of Nabisco, Inc.," true and correct copies of the pertinent pages of which are attached to the Declaration of Dona M. Wagner ("Wagner Cert.") as Exhibit A, at 7; "FedEx Express Plan," true and correct copies of the pertinent pages of which are attached to the Wagner Cert. as Exhibit B, at 55).[7]  The only "significant money damages" Plaintiff can point to is the difference between what CIGNA determined was owed under the terms of the beneficiaries' ERISA plans and what Plaintiff believed it was owed under those plans.  This is simply a claim for benefits, squarely within Section 502's civil enforcement scheme, and this claim is therefore an ERISA claim within this Court's subject matter jurisdiction.

---

[7] The "FedEx Express Plan" actually uses the phrase "Reasonable and Customary" ("R&C") in lieu of "UCR," but the terms have the same meaning. <u>See</u> Wagner Cert., Ex. B at 55.

20

Plaintiff's unjust enrichment claim, as set forth in Count One, is logically convoluted, for reasons discussed in CIGNA's motion to dismiss.  It too, however, is based upon Plaintiff's assertion that it is entitled to more money than it received for treating its assignors, the plan beneficiaries.  The Complaint alleges:  "defendant consistently and systematically refused to pay plaintiff UCR for the medical services rendered contrary to defendant's confirmation of payment terms."  (North Jersey II Compl., Doc. 1-7 at 7,  ¶ 2).  CGLIC did not, of course, receive any benefit by virtue of the treatment itself.  Plaintiff did not provide medical treatment to CGLIC.  CGLIC's only connection to those services were that Plans for which CGLIC provided claims administration services owed coverage in accordance to their respective terms.  There could only be an unjust benefit to the extent Plaintiff absorbed the cost of treatment that CGLIC withheld contrary to the terms of that coverage.  Indeed, the Complaint states that CGLIC confirmed that there was coverage subject to the UCR term.  The disagreement is thus focused exclusively on how much money the UCR term requires CGLIC to pay.  The only way to read the Complaint is that this is a benefits claim requiring the Court to construe a Plan term.  This dispute clearly lies in the heartland of ERISA's Section 502(a) civil enforcement scheme.

The claims in this case, to the extent claims are stated at all, plainly arise under ERISA's civil enforcement remedies in Section 502.  CIGNA's obligation to pay benefits derives solely from its role as insurer and claims administrator of the plans.  The Supreme Court's decision in Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), is on point.  In Davila, the Supreme Court held that the state-law claims were completely preempted by ERISA and thus removable to federal court, because the defendants' liability for any damages "would exist here only because of petitioners' administration of ERISA-regulated benefit plans," and thus the defendants' "potential liability under [state law] in these cases . . . derives entirely from the particular rights and obligations established by the benefit plans."  Id. at 213.  CGLIC's determination of the amount of benefits owed was based on the terms of the plans

themselves and review in this Court of that determination will likewise require application of the plan terms.

Plaintiff labors to argue that its state law claims impose separate, non-ERISA obligations upon CGLIC.  This is impossible to square with the plain language of <u>Davila</u>, which teaches that "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted" <u>Id.</u> at 209.  Plaintiff's state common law claims, which Plaintiff previously conceded are subject to complete preemption, are of the sort that are routinely removed pursuant to ERISA's complete preemption doctrine.  Promissory estoppel shares the same elements as the misrepresentation claim, except that promissory estoppel requires a promise.  Such claims, (even if they contained specific factual allegations of a false statement or broken promise, which they do not), "no matter how couched," <u>Pryzbowski</u>, 245 F.3d at 273, are plainly and unequivocally preempted.

CGLIC does not object to Plaintiff's assertion that it can be sued by individuals for claims that are truly independent of its obligations as an ERISA plan claims administrator or insurer.  Plaintiff's problem is that it has not asserted such a claim.  Certainly, the mere existence of a state-based cause of action cannot mean that the duty imposed thereunder is "independent" within the Supreme Court's meaning in <u>Davila</u>.  This suggestion would nullify the entire body of ERISA preemption law.  The issue, as stated in <u>Davila</u>, is whether a state law obligation is "independent of ERISA or the plan terms."  542 U.S. at 208.

Here it manifestly is not--Plaintiff's claims derive from the services rendered to ERISA Plan beneficiaries and the relevant Plans' obligations to pay for those services.  In alleging that it is an out-of-network provider, Plaintiff admits that it does not have any separate agreement with CGLIC.  Plaintiff has also admitted that it has received assignments of its patients' rights to recover benefits under their respective Plans.  Nevertheless, Plaintiff contends that it can bring a state, common law

action because it believes that CGLIC interpreted a Plan term in a way that reduced the amount of Plan benefits Plaintiff received.  How Plaintiff can argue that this proposition would not "supplement or supplant the ERISA civil enforcement remedy" is simply incomprehensible.

### iii.   Plaintiff's Claims Will Require Interpretation of the Terms of the Plans

None of Plaintiff's claims can be assessed without reference to a key term of the employee benefit plans at issue here.  Consequently, Plaintiff's claim that its causes of action are independent of ERISA for purposes of Section 502's complete preemption is directly contrary to ERISA case law.

The Supreme Court's statement in <u>Davila</u>, rejecting a claimant's reliance on a state statute, is compelling on the facts of this case.  Notwithstanding the plaintiff's invocation of the state Texas Health Care Liability Act ("THCLA"), the <u>Davila</u> Court found:  "interpretation of the terms of respondents' benefit plans forms an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans.  Petitioners' potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans . . . respondent's THCLA causes of action are not entirely independent of the federally regulated contract itself."  <u>Davila</u>, 542 U.S. at 213-14.  <u>Cf.</u> <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 217 (1985) (state-law tort of bad-faith handling of insurance claim pre-empted by LMRA § 301, since the "duties imposed and rights established through the state tort . . . derive[d] from the rights and obligations established by the contract"); <u>United Steelworkers of America v. Rawson</u>, 495 U.S. 362, 371 (1990) (state-law tort action brought due to alleged negligence in the inspection of a mine was pre-empted, as the duty to inspect the mine arose solely out of the collective-bargaining agreement).

This basic law was recently rearticulated in <u>D'Alessandro v. Hartford Life & Accident Ins. Co.</u>, Civil Action No. 09-1115 (JAP), 2009 U.S. Dist. LEXIS 37048, *9-10 (D.N.J. May 1, 2009) in which Judge Pisano found that "Plaintiff's NJCFA claim is preempted by ERISA because the claim relates to

the employee benefit plan since it requires reference to the policy . . . Specifically, in her Complaint Plaintiff states that the claim relates to the 'performance by the defendant in the delivery of benefits due to the plaintiff under that policy of insurance' which would require interpretation of the policy." See also Wayne Surgical Ctr., 2007 U.S. Dist. LEXIS 61137 *21-2 (D.N.J. Aug. 20, 2007) (claim against health insurer for unjust enrichment, tortuous interference and NJCFA "requires the Court to consider in detail the plans to which [the provider] received an assignment of benefits").

These District of New Jersey rulings were made in the context of a Section 514 conflict preemption analysis, but reference to the discussion in Davila and other authorities cited above demonstrates that the necessity to refer to plan terms is important in the context of a Section 502 complete preemption analysis as well.  542 U.S. at 213-14.  The Supreme Court found that, because interpretation of the plan was necessary to adjudicate state law claim, "[h]ence, respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.  We hold that respondents' state causes of action fall 'within the scope of' ERISA § 502(a)(1)(B), and are therefore completely pre-empted . . . and removable to federal district court."  Id. at 214  (internal citations omitted).

The general allegations of the North Jersey II Complaint and each of the four Counts included therein squarely and exclusively rest on the allegation that CGLIC incorrectly applied the UCR term of coverage.  Thus, Plaintiff alleges:  "the net effect of CIGNA's intentional and improper acts in refusing to make correct payment to [Plaintiff] despite defendant's representations to the contrary, was to force [Plaintiff] to suffer the loss . . . ."  (North Jersey II Compl., Doc. 1-7 at 3 ¶ 5 (emphasis added).  In fact, there is not even a factual allegation of fraud, negligent misrepresentation or a broken promise. Rather, Plaintiff alleges that it obtained a representation that the Plan benefits would pay for medical services under the terms of the policy and payment was duly made.  Now it appears that Plaintiff was disappointed by those benefits and wishes to dispute CGLIC's interpretation of the UCR term.

24

In sum, a representation that Plan benefit will provide reimbursement at the UCR rate (which, as stated above, is a Plan term) does not give rise to an extra-ERISA breach of duty when the parties subsequently dispute what that rate will be.  As quoted above, even Plaintiff cannot avoid this truth in its own Complaint, where it states that that Defendant failed to make "correct" payment.  What is "correct" payment is classically the proper subject for an ERISA litigation under section 502.  Seasoning the pleading with conclusory references to misconduct, and misrepresentations does not change the basic nature of the case.  Indeed, if it were otherwise, any dispute over benefits could be re-characterized as a state law action by this simple technique.  It is not possible to reconcile such an obvious end-run around ERISA with the Supreme Court's finding in Pilot Life that the statute effects a Congressionally mandated balance that may not be undermined by state remedies.

Again returning to Davila, the Supreme Court couched this as an issue of causation.  The Texas statue in question in that case provided for liability for damage caused by a negligent denial of a claim.  The Court reasoned that, if the claim had been properly denied under the terms of the plan, the alleged harm would be caused by the terms of the plan, not the denial.  529 U.S. at 212-13.  So it is here.  If CGLIC properly applied the UCR term, any "damage" would be result from the Plan terms themselves.  If CGLIC was substantively justified in denying or reducing the claims as it did under the terms of the plan, and if it did so in the manner and time specified in the plan and the ERISA statute and regulations, Plaintiff's state common law, statutory and regulatory causes of action must fail.  Therefore, this case will unavoidably require interpretation and application of the relevant plans and the federal law governing those plans.  This case was thus properly removed under Section 502.

**III.    Plaintiff Has Mis-read the *Memorial Hospital* Line of Cases, Which Do Not Aid Plaintiff's Motion**

Plaintiff cites a line of cases which it says is exemplified by Memorial Hospital Systems v. Northbrook Life Insurance Company, 904 F.2d 236 (5th Cir. 1990).  Plaintiff's authorities are largely a collection of older cases from other Circuits.  Plaintiff does not cite any case law from the United

States Court of Appeals for the Third Circuit.  In the twenty years since this supposedly leading case was decided, the Third Circuit has never cited <u>Memorial Hospital</u> for the proposition Plaintiff advances.  Plaintiff cites a lone 1993 opinion from this District, but much more recently, a District Court in this Circuit has ruled against Plaintiff's position.  <u>Geisinger South Wilkes-Barre  Med. Center v. Duda</u>, Civil Action No. 3:07-888 (EMK), 2008 U.S. Dist. Lexis 30741 *8-9 (M.D. Pa. March 31, 2008) (rejecting the claimant's reliance on Memorial Hospital and finding that its estoppel claim based upon a pre-authorization of coverage was preempted under the language of <u>Pilot Life</u>); <u>see</u> <u>also</u> <u>Charter Fairmount Inst., Inc., v. Alta Health Strategies</u>, Civil Action No. 93-3258 (HJH), 1993 U.S. Dist. Lexis 18317, *9 at n.3 (E.D. Pa. Nov. 30, 1993) (declining to follow <u>Memorial Hospital</u> and noting contrary authority).

Plaintiff misunderstands <u>Memorial Hospital</u> and its progeny in any event.  That case did not involve common law claims regarding a supposed "misrepresentation" about the amount of benefits available under a specific plan term.  In <u>Memorial Hospital</u>, the Fifth Circuit considered the effect of a carrier's false pre-authorization statement that a patient had coverage when, in fact, there was no coverage.  The provider allegedly relied on that representation and provided service, for which it was not paid.  This situation is fundamentally different from that of a provider such as Plaintiff, which was paid but now complains that UCR, a plan term, requires that it be paid more.  In this case, CGLIC's alleged  representation of coverage was correct.

The following passage from <u>Memorial Hospital</u> illustrates the point:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. . . . A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.

904 F.2d at 246 (emphasis added). <u>All</u> of the cases relied upon by Plaintiff deal with misrepresentations regarding the existence of coverage and not a dispute over the content of a plan term. (<u>See</u> cases cited at Plaintiff's Brf. at 2-3 <u>e.g.</u>, <u>The Meadows v. Employers Health Ins.</u>, 47 F.3d 1006, 1010 (9th Cir. 1995)).

Here, of course, as the Complaint itself alleges, coverage existed under the Plans and CGLIC made UCR payment, as it construed that term. The dispute is simply over how much should be afforded under the relevant plan terms. The <u>Memorial Hospital</u> panel contrasted the case before it with one in which the provider's claim arose "due to the patient's coverage under an ERISA plan." 904 F.2d at 246. Thus, even the <u>Memorial Hospital</u> court would have concluded that this matter was preempted under ERISA.

Other cases in the <u>Memorial Hospital</u> line actually recognize the distinction identified here. Nine years after <u>Memorial Hospital</u>, the Fifth Circuit addressed a complaint that alleged both that the claims administrator falsely represented that there was coverage, and that the Plan failed to pay the full amount of benefits under the terms of the policy. <u>Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.</u>, 164 F.3d 952 (5th Cir. 1999). In that case, which Plaintiff cites, the Fifth Circuit clarified <u>Memorial Hospital</u>, and stated the applicable rule:

> ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider . . . against an insurer for its negligent misrepresentation regarding the <u>existence</u> of health coverage. However, a hospital's state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the hospital seeks to recover benefits owed <u>under the plan</u> to a plan participant who has assigned her right to benefits to the hospital.

<u>Id.</u> at 954 (citation of <u>Memorial Hospital</u> omitted) (emphasis added). The Court of Appeals found that its precedents required, "when there is <u>some</u> coverage, that the court take the next analytical step and determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." <u>Id.</u> at 955 (emphasis in original).

In this case, resolution of the case will turn solely on the Court's ruling on the interpretation of a plan term: the UCR term of coverage. Clearly, even in the Circuit of <u>Memorial Hospital</u>, the state law claims Plaintiff alleges in this case would be preempted. Any further doubt is removed by <u>Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Live Insurance Company</u>, Civil Action No. 05-4389 (LHR), 2006 U.S. Dist. Lexis 39268 (S.D. Tex. June 13, 2006), which applied the Third Circuit's ruling in <u>Pascack</u> to a case in which charges were denied because the services at issue were duplicative or not "reasonable" and "customary".[8] The rate for reimbursement was governed by a separate managed care contract between the provider and the ERISA administrator. Although the claim under the separate contract was not preempted, the District Court had no trouble harmonizing <u>Pascack</u> and <u>Memorial Hospital</u> to hold that the dispute over "whether the <u>services</u> themselves were usual, customary, reasonable, medically necessary, or otherwise 'covered' under the [ERISA] Plan the claim is dependent on the Plan and completely preempted by ERISA." <u>Id.</u> at * 25 (emphasis and alteration in original).

In the situation presented by <u>Memorial Hospital</u>, <u>et al</u>., the claims administrator is liable for a misrepresentation outside of the terms of any ERISA plan. Indeed, as the Fifth Circuit observed, it was the <u>lack</u> of an ERISA plan covering the patient that gave rise to the cause of action, 904 F.2d at 246. In this case, by contrast, if CGLIC correctly paid the benefits under the UCR term of the relevant Plans, there was no breach of any duty, tort or otherwise. The outcome of this case, therefore, depends on the scope of ERISA plan benefits as determined by the Court. See <u>Penny/Ohlmann/Nieman, Inc.</u>, 399 F.3d 692, 703 (6th Cir. 2005) ("Where resolution of the misrepresentation claim necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted."). This is squarely within this Court's ERISA jurisdiction, this case was properly removed on that ground, and the motion to remand must be denied for this additional reason.

---

[8] These were plan terms, but the case did not involve a dispute over UCR rates - rather, it concerned the nature of the services.

**IV.      Plaintiff Is Bound By and Cannot Avoid the Effect of Its Prior Admissions**

The tactical nature of Plaintiff's motion for remand motion to remand is plan from the face of that application.  The Court relied on Plaintiff's representations in North Jersey I.  If Plaintiff can argue to the contrary now, there will be no end to its repetitive state court filings, and each removal will be met with a new position on the merits and limited only by counsel's imagination.

Fortunately, Plaintiff is properly estopped from denying its previous concession in open Court under the doctrine of judicial estoppel and the parties and the Court can rely upon them.  The courts apply judicial estoppel where a litigant seeks to "assert[] a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."  Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).  "[I]t is designed to prevent litigants from 'playing fast and loose with the courts,'" id. (quoting Scarano v. Cent. R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953)), and is intended "'to protect the courts rather than the litigants,'" id. at 360 (quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121-22 (3d Cir. 1992)).  Several factors are relevant to the judicial estoppel analysis: (1) the inconsistency of a party's later position with its earlier position; (2) the party's success in having the earlier position accepted such that acceptance of the later position would create the perception that either the first or the second court was misled, thereby threatening judicial integrity; and (3) the unfair advantage accruing to the party asserting the inconsistent position or the unfair detriment to the opposing party.  United States v. Pelullo, 399 F.3d 197, 222-23 (3d Cir. 2005) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).  Notably, a concession or admission made in the course of an earlier argument is binding for purposes of judicial estoppel.  See Spears v. Ryan, Civil Action No. 00-1051 (PHX), 2009 U.S. Dist. LEXIS 83695, at *35 (D. Ariz. Sept. 14, 2009) (petitioner judicially estopped from arguing that his request for counsel was unambiguous where he conceded in prior briefing that the request was ambiguous).

Each of these factors is present here.  Plaintiff squarely represented to the Court that it received assignments from its patients and that its unjust enrichment and misrepresentation claims were preempted.  (Hr'g Tr., Wohlforth Ex. B at 5:5-12).  The Court noted those concessions in its Letter Opinion denying Plaintiff's motion for remand and relied upon them.  (January 11, 2009 Report and Recommendation, North Jersey I Docket, Doc. 17, at 4).  To permit Plaintiff to effectuate an about-face on these issues would be patently unfair.  Plaintiff lost the remand motion, dismissed its case and simply started over in the apparent hope that it would do better on a second attempt.  This is exactly the type of conduct the judicial estoppel doctrine is intended to prevent.  For these reasons, Plaintiff should not be heard to argue that there is no assignment of benefits nor that its unjust enrichment and misrepresentation claims are not preempted under ERISA.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Connecticut General Life Insurance Company respectfully requests that Plaintiff's motion for remand be denied.

Respectfully submitted,

GIBBONS P.C.
*Attorneys for Defendant*
*Connecticut General Life Insurance Company*

DATED:  December 30, 2010                    BY: <u>s/ E. Evans Wohlforth, Jr.</u>
                                                  E. Evans Wohlforth, Jr.
                                                  Timothy J. Duva
                                                  Eugene H. Kim