# MAZIE SLATER KATZ & FREEMAN, LLC

COUNSELLORS AT LAW

103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898
Fax (973) 228-0303
www.mskf.net

David A. Mazie*†
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman

\* Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

† Certified as a Civil Trial Specialist
by the National Board of
Trial Advocacy

Writer's Direct Dial: 973-228-0151

Counsel
Beth G. Baldinger°

Jennifer D. Pawlak°
Matthew R. Mendelsohn°
John D. Gagnon
Karen G. Kelsen°
Cheryll A. Calderon
Andrew S. Riso°

°Member of N.J. & N.Y. Bars

January 24, 2011

Honorable Madeline Arleo-Cox, U.S.M.J.
United States District Court
Martin Luther King Jr. Federal Building
& Courthouse
Room 2060
50 Walnut Street
Newark, New Jersey 07102

Re:    North Jersey Brain & Spine Center v. Connecticut General Life
       Insurance Company
       Civil Action No.:  10-4260

Dear Judge Arleo-Cox:

Please accept this letter in lieu of a more formal brief on behalf of plaintiff, North Jersey

Brain & Spine Center ("NJBSC") in further support of its motion to remand and in opposition to

the Rule 12(b)(6) motion to dismiss filed by defendant Connecticut General Life Insurance

Company ("CGLIC").

No matter how many briefs CGLIC chooses to file and regardless of the number of pages

in those briefs and annexed certifications, this case is simply about two claims as specifically

identified in the Amended Complaint -- regarding services rendered to patients R.L. and N.I

Honorable Madeline Arleo-Cox, U.S.M.J.
January 24, 2011
Page 2

totaling roughly $63,000 -- brought pursuant to state common law causes of action. That's it. The fatal flaw permeating CGLIC's overblown arguments is that it chooses to ignore that NJBSC is master of its complaint and consequently "necessarily decides the law under which its claims will be advanced." Oettinger v. Township of Bedminster, 2010 WL 3035147, *1 (D.N.J., Aug. 3, 2010) (citations omitted).

Here, NJBSC's claims do not implicate ERISA whatsoever. Although plaintiff concedes that its intentional misrepresentation cause of action may give rise to punitive damages, thereby arguably satisfying the amount in controversy requirement and thus establish diversity subject matter jurisdiction, all that means is that this Court will be required to apply New Jersey state law. Accordingly, at a minimum CGLIC's motion to dismiss should be denied and this case either remanded to the Superior Court or proceed here with this Court applying New Jersey state common law.

It comes as no surprise that CGLIC devotes 25 pages in its remand opposition brief arguing alleged ERISA preemption and only 3 pages attempting to distinguish the "Memorial Hospital Line of Cases." In doing so, CGLIC makes numerous red herring arguments, comparing this current litigation to a previous one involving some of these parties (Civil Action No. 09-2630), and even goes so far as to impermissibly disclose settlement negotiations from that prior case.[1] **The error in defendant's strategy is that this present case has absolutely nothing to do with the prior litigation. The prior 2009 litigation, involving different defendants and potentially involving many dozens of claims, was brought under state statutes and regulations -- specifically the New Jersey prompt payment laws and**

---

[1]     CGLIC also makes an obscure argument, that the case at bar should be consolidated with some unrelated class actions pending before Judge Chesler. Clearly there is no legal ground to do so and plaintiff will not address this baseless contention unless this Court directs us to.

Honorable Madeline Arleo-Cox, U.S.M.J.
January 24, 2011
Page 3

emergency services regulations -- and was ultimately voluntarily dismissed by plaintiff. The present case, as is immediately apparent from reviewing the two complaints, attached hereto as Exhibits "A" and "B"), involves only 2 claims and arises under completely different theories that have no relationship whatsoever to the first lawsuit. Specifically, for the two claims at issue in the case at bar, NJBSC avers that CGLIC made payment misrepresentations to NJBSC prior to plaintiff's surgeons rendering services to the two patients and that plaintiff relied on these payment misrepresentations to its detriment. In short, the two cases are apples and oranges.

It is well settled, of course, that even within a single litigation this Court has a continuing obligation to examine the jurisdictional issue at all times during the litigation and, in fact, even following the entry of a judgment at the conclusion of a case. United States v. Ceja-Prado, 333 F.3d 1046 (9th Cir. 2003) ("[E]very federal court has a continuing obligation to ensure that it possesses subject-matter jurisdiction."); Howery v. Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001) ("It is [] true that federal courts must address jurisdictional questions whenever they are raised"). Here, the jurisdictional issue is not even being raised in the same case, but two completely different cases where the only "factual overlap" is that the two claims in the instant case were previously in the former case. However, that certainly does not mean that the Court should not analyze the jurisdictional and preemption issues once again, based on the allegations in the present lawsuit and completely independent of the Court's prior analysis.

Moreover, parties cannot stipulate to or ever waive subject matter jurisdiction. American Fire & Casualty Co, v. Finn, 341 U.S. 6, 17-18 (1951); Brown v. Francis, 75 F.3d 860, 866 (3d Cir. 1996); Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 883 (7th Cir. 1998). Thus, it is of no moment if in a previous case, NJBSC sought to pursue a claim under an alleged

Honorable Madeline Arleo-Cox, U.S.M.J.
January 24, 2011
Page 4

assignment to receive direct payment.  There is no "judicial estoppel" here.  **The fact remains that here, in this case, NJBSC is pursuing its legal rights based on promissory estoppel and misrepresentation theories that are completely independent of ERISA, have nothing to do with the state statutory and regulatory claims previously asserted, do not require a review of plan documents whatsoever, and can be brought directly by plaintiff irrespective of any purported assignments.**

As noted supra, CGLIC spends only 3 pages at the very end of its remand brief responding to the substantive issues and caselaw presented by plaintiff.  **Significantly, CGLIC does not even attempt to address any of these cases whatsoever and has no legitimate response -- other than to call them "a collection of older cases" (CGLIC Remand Brief at 25) -- to counter the well-settled law from around the country, <u>including New Jersey</u>, that a provider such as NJBSC may bring suit directly against a health insurer -- pursuant to state common law theories and independent of any purported assignments of benefits-- for payment of its services where those services are rendered in reliance on the insurer's pre-authorization and pre-certification of payment terms.**  The provider does not bring a lawsuit of this type as an assignee of ERISA benefits from the patient but, **rather**, solely in the practice's capacity as an independent third-party healthcare provider.  See Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida, 942 F. Supp. 562 (S.D. Fla. 1996); The Meadows v. Employers Health Insurance, 47 F.3d 1006 (9th Cir. 1995); Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc., 944 F.2d 752 (10th Cir. 1991); Memorial Hospital Systems v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990); Transitional Hospital Corp. v. Blue Cross and Blue Shield of Texas, Inc., 164 F.3d 952 (5th Cir. 1999); Hoag Memorial Hospital v. Managed Care Administrators, 820 F. Supp. 1232 (C.D. Cal. 1993); McCall v.

Honorable Madeline Arleo-Cox, U.S.M.J.
January 24, 2011
Page 5

Metropolitan Life Ins. Co., 956 F. Supp. 1172 (D.N.J. 1996); Beth Israel Medical Center v. Sciuto, 1993 U.S. Dist. LEXIS 9145 (S.D.N.Y. 1993); Alliance Health of Santa Teresa v. National Presto Industries, Inc., 137 N.M. 537 (N.M. Ct. App. 2005).

**Moreover, CGLIC completely ignores the reported decision from our District relying on Memorial Hospital -- McCall v. Metropolitan Life Ins. Co., 956 F. Supp. 1172 (D.N.J. 1996) -- and instead cites to two unreported cases from the Eastern District and Middle District of Pennsylvania that obviously have no bearing here.** In reviewing CGLIC's brief, NJBSC does not believe it is necessary to reiterate what was already significantly addressed in plaintiff's moving brief and for the sake of brevity refers this Court to the lengthy discussion of the relevant law regarding promissory estoppel and misrepresentation in the moving brief at Point I, pages 4-13.

Finally, CGLIC's Rule 12(b)(6) motion should be summarily denied. This Court is certainly aware of the heavy burden defendant must satisfy on a motion to dismiss at the pleadings stage of the litigation, and that plaintiff's well-pled facts must be accepted as true. Here, even a cursory review of NJBSC's Amended Complaint demonstrates that plaintiff properly pled its claims in accordance with the law of promissory estoppel and misrepresentation arising out of Memorial Hospital, McCall and their progeny.

Specifically, as pled in its Amended Complaint, NJBSC, a non-participating neurosurgical provider, rendered surgical services to two patients: (1) patient R.L (name withheld due to confidentiality), and that on July 6, 2004 NJBSC's representative spoke with "Enid," CGLIC's representative, during which defendant's representative confirmed with plaintiff that R.L. had out-of-network coverage and that CGLIC would pay "70% of doctor's usual, reasonable and customary fees." Plaintiff further pled that relying on this confirmation,

Honorable Madeline Arleo-Cox, U.S.M.J.
January 24, 2011
Page 6

NJBSC's surgeons rendered services to R.L on July 27, 2004.  However, CGLIC subsequently paid plaintiff significantly less than the amount it agreed to pay; and (2) patient N.I. (name withheld due to confidentiality), and that on February 9, 2004, NJBSC's representative spoke with "Theresa," CGLIC's representative during which defendant's representative confirmed with plaintiff that N.I. had out-of-network coverage and that CGLIC would pay "70% of usual, reasonable and customary fees [and that] after $2,500 out of pocket expense, CGLIC will pay 100%."  Plaintiff further pled that relying on this confirmation, NJBSC's surgeons rendered services to N.I. on April 14, 2004.  However, once again CGLIC subsequently paid plaintiff significantly less than the amount it agreed to pay.  (See Amended Complaint at "THE PARTIES" at ¶1-2 and "SUBSTANTIVE ALLEGATIONS" at ¶¶ 3-9).  For the sake of a complete record, we have attached hereto as Exhibits "C" and "D," NJBSC's contemporaneously documented billing system notes related to patients R.L and N.I, respectively, memorializing CGLIC's promise to pay in accordance with the confirmation of payment terms as pled in the Amended Complaint.[2]

Clearly, and directly contrary to CGLIC's contentions, there is absolutely no need to review any "plan documents."  NJBSC's case rises and falls on whether CGLIC made the alleged payment representations.  Specifically for R.L., the allegation is that CGLIC represented it would pay "**doctor's** usual reasonable and customary fees."  Obviously, the "doctor's fees" are those billed by the physician; there is no reason to review "plan documents" to determine what those fees would be.  Similarly, for N.I., the allegation is the CGLIC represented it would pay "**100%**" after $2,500 out of pocket maximum was met.  Once again, "100%" obviously means

---

[2]      Although plaintiff has certainly pled its Amended Complaint with sufficient facts, should this Court believe that the allegations are deficient, respectfully we should be granted leave to amend in order to remedy such perceived deficiencies.

Honorable Madeline Arleo-Cox, U.S.M.J.
January 24, 2011
Page 7

payment of the entire amount billed by the physician once $2,500 was paid.  There is simply no need to interpret "plan documents" for NJBSC to prevail on this state law promissory estoppel/misrepresentation claim either.  **In short, the allegations by NJBSC here for the two claims at issue present the classic state common law claims that have repeatedly arisen in all of the cases plaintiff cited in its brief.**

        In sum, CGLIC's two briefs totaling 60 pages and its hundreds of pages of certifications and attached documents (improperly annexed as part of a motion to dismiss no less) do not alter the fact that the case at bar simply presents two claims, totaling roughly $63,000 and arising solely under run-of-the-mill state common law.  Whether or not this Court determines it may exercise diversity jurisdiction based on the possibility of a punitive damages award does not morph this simple litigation into the proverbial federal case.  Thus, even if this Court were to conclude that remand is not appropriate because plaintiff "satisfies" the jurisdictional minimum, it should nevertheless apply New Jersey state common law to the two claims at issue.  For these reasons, at a minimum CGLIC's motion to dismiss should be denied even if NJBSC's motion to remand is not granted.

                                    Respectfully,

                                    ERIC D. KATZ

EDK/av
cc:      Honorable Susan D. Wigenton, U.S.M.J.
         All Counsel of Record

H:\EDK\Comp Neuro\CIGNA IV\Arleo-Cox ltr brief in support of remand mtn 1-4-11.doc

Exhibit A

MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-228-9898
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER | *Civil Action No:* 10-4260 (GEB)(MCA) |
| Plaintiff, | |
| vs. | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY | **AMENDED COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiff, North Jersey Brain & Spine Center ("NJBSC"), by way of Complaint, alleges as follows:

### THE PARTIES

1.    Plaintiff, North Jersey Brain & Spine Center ("NJBSC") a medical practice specializing in surgery and treatment of the brain and spinal cord and having its office located at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649.  At all relevant times, the plaintiff was (and is) an "out-of-network" medical practice that provided various neurosurgical medical services to subscribers enrolled in the healthcare plans of defendants.

2.     Defendant Connecticut General Life Insurance Company (Collectively "CIGNA") maintains its corporate offices in Connecticut. CIGNA is a managed care company consisting of several healthcare plans providing healthcare coverage to its subscribers for both "in-plan" and "out-of-network" medical services.

## SUBSTANTIVE ALLEGATIONS

3.     CIGNA operates, controls and/or administers managed healthcare insurance plans providing health and medical coverage to its members and dependents. At all relevant times, CIGNA provided certain members and/or their dependents with "out-of-network" benefits, enabling these individuals to gain access to the physicians (providers) of their choice, rather than limiting access only to "in-plan" physicians as would be true with a health maintenance organization plan.

4.     Specifically, in this case, the plaintiff's highly qualified neurosurgeons successfully performed complex neurosurgical procedures on the subscribers or their dependents. It is not disputed that all of the surgical procedures performed were "medically necessary" and were approved by CIGNA.

5.     In each instance, prior to NJBSC rendering services, CIGNA agreed to directly compensate plaintiff the usual, customary and reasonable fee ("UCR") for the services provided. Consequently, in each instance, NJBSC reasonably believed and relied upon CIGNA's express or implied representations that plaintiff would be paid UCR and on that basis agreed to render the services. Just by way of illustrative example, and without limitation as to patients, dates and services, with regard to services rendered to patient R.L (name withheld due to confidentiality), on July 6, 2004 NJBSC's representative spoke with "Enid," CIGNA's representative. During that communication, defendant's representative

- 2 -

confirmed with plaintiff that R.L. had out-of-network coverage and that CIGNA would pay "70% of doctor's usual, reasonable and customary fees." Relying on this confirmation, NJBSC's surgeons rendered services to R.L on July 27, 2004. However, CIGNA subsequently paid plaintiff significantly less than the amount it agreed to pay. Similarly, with regard to services rendered to patient N.I. (name withheld due to confidentiality), on February 9, 2004, NJBSC's representative spoke with "Theresa," CIGNA's representative. During that communication, defendant's representative confirmed with plaintiff that N.I. had out-of-network coverage and that CIGNA would pay "70% of usual, reasonable and customary fees [and that] after $2,500 out of pocket expense, CIGNA will pay 100%." Relying on this confirmation, NJBSC's surgeons rendered services to N.I. on April 14, 2004. However, once again CIGNA subsequently paid plaintiff significantly less than the amount it agreed to pay.

6.     UCR is the fee that "out-of-network" providers, like the plaintiff, normally charge to their patients in the free market, i.e., without a written provider agreement with an insurance company to reduce such a charge in exchange for obtaining access to the insurance company's subscribers. Moreover, UCR means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

7.     Here, the net effect of CIGNA's intentional and improper acts in refusing to make correct payment to NJBSC, despite defendant's representations to the contrary, was to force NJBSC to suffer the loss by accepting less than the plaintiff was entitled to receive for the medical services it performed. It is also completely unreasonable to assume that the subscribers could each pay what would amount to several thousands of dollars out of their own pockets for each surgical procedure improperly paid for by CIGNA.

- 3 -

8.    Although not required to do so, NJBSC has nonetheless appealed CIGNA's improper claims payments but defendant has provided only incomplete or evasive responses to the plaintiff's inquiries and/or has refused to pay any additional fees.

9.    By and through this lawsuit, NJBSC now seeks damages from CIGNA, including compensatory and punitive damages, for promissory estoppel, misrepresentation and unjust enrichment.  Plaintiff's claims arise solely under state common law and do not implicate ERISA whatsoever, nor require any review or consideration of so-called "plan documents."  In short, NJBSC's claims are based solely on the confirmation of payment terms by defendant to plaintiff's representative prior to the practice's rendering of the services.

## **FIRST COUNT**
### **(Promissory Estoppel)**

10.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

11.    In reliance upon CIGNA's confirmation of UCR payment prior to rendering services, NJBSC provided defendant's subscribers or dependents with "medically necessary" care and treatment.

12.    At no time did defendant ever withdraw its confirmation of UCR payment.

13.    Despite defendant's continued confirmation of UCR payment, defendant has not appropriately paid NJBSC for the medical services rendered.

14.    Defendant's actions have therefore caused plaintiff to suffer a detriment of a definite and substantial nature in reliance upon defendant's promise to pay UCR for the medical services rendered, thus constituting an actionable claim pursuant to the doctrine of promissory estoppel.

15.    NJBSC has suffered significant damages as a result.

WHEREFORE, plaintiff demands judgment against defendant for:

a)    Compensatory damages;

b)    Interest;

c)    Costs of suit;

d)    Attorney's fees; and

e)    Such other relief as the Court deems equitable and just.

## SECOND COUNT
### (Negligent Misrepresentation)

16.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

17.     Despite its confirmation of UCR payment prior to plaintiff's rendering of the services, defendant negligently refused to pay the subject claims appropriately or at all in accordance with said confirmation.  Because of defendant's negligence, plaintiff was paid less than it reasonably expected to be paid.

18.     Defendant's negligent misrepresentation of UCR payment was unknown to plaintiff at the time it agreed to perform the medical services for the subscribers and/or their dependents.  Plaintiff reasonably expected and relied upon what it believed to be defendant's honest representations that the plaintiff would be properly compensated in accordance with the payment confirmation.

19.     NJBSC's reliance on these representations was to its substantial detriment and as a result the plaintiff suffered significant money damages.

20.     By virtue of the foregoing, defendant has committed negligent misrepresentation.

WHEREFORE, plaintiff demands judgment against defendant for:

a)      Compensatory damages;

b)      Interest;

c)      Costs of suit;

d)      Attorney's fees; and

e)      Such other relief as the Court deems equitable and just.

- 6 -

## THIRD COUNT
### (Unjust Enrichment)

21.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

22.     At all relevant times, defendant consistently and systematically refused to pay plaintiff UCR for the medical services rendered contrary to defendant's confirmation of payment terms.

23.     Defendant has therefore been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to plaintiff.

24.     As a result of defendant's unjust enrichment, NJBSC has suffered damages.

WHEREFORE, plaintiff demands judgment against defendant for:

a)      Compensatory damages;

b)      Interest;

b)      Costs of suit;

d)      Attorney's fees; and

e)      Such other relief as the Court deems equitable and just.

## FOURTH COUNT
### (Intentional Misrepresentation)

25.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

26.    Despite its confirmation of UCR payment prior to plaintiff's rendering of services, CIGNA intentionally refused and has continued to refuse to pay the subject claims appropriately or at all.  Because of defendant's intentional, willful and wanton conduct, plaintiff was paid significantly less than it should have been paid.

27.    Defendant's intentional false promise to pay claims in accordance with its UCR confirmation was unknown to plaintiff at the time it agreed to perform the medical services for the subscribers and/or their dependents.  Plaintiff reasonably expected and relied upon what it believed to be defendant's honest representations that the plaintiff would be properly compensated in accordance with the payment confirmation.

28.    NJBSC's reliance on these representations was to its substantial detriment and as a result plaintiff suffered significant money damages.

29.    By  virtue  of  the  foregoing,  defendant  has  committed  intentional misrepresentation.

WHEREFORE, plaintiff demands judgment against defendant for:

a)    Compensatory damages;

b)    Punitive damages;

c)    Interest;

d)    Costs of suit;

- 8 -

e)   Attorney's fees; and

f)   Such other relief as the Court deems equitable and just.

**MAZIE SLATER KATZ &**
**FREEMAN, LLC**
Attorneys for Plaintiff

By:_____
         ERIC D. KATZ

DATED:  November 12, 2010

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**MAZIE SLATER KATZ &**
**FREEMAN, LLC**
Attorneys for Plaintiff

By:_____
         ERIC D. KATZ

DATED:  November 12, 2010

H:\EDK\Comp Neuro\CIGNA IV\CIGNA APPEALS\Complaint -US District Court 11-3-10.doc

Exhibit B

SUPERIOR COURT BERGEN COUNTY
FILED

**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

APR 1 3 2009

DEPUTY CLERK

|  |  |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION: BERGEN COUNTY<br>: DOCKET NO.: BER-L- 3 400-09 |
|     Plaintiff, | : |
| vs. | :    **COMPLAINT AND**<br>:      **JURY DEMAND** |
| CIGNA HEALTHCARE OF NEW JERSEY, INC. and CIGNA CORPORATION, | : |
|     Defendants. | : |

Plaintiff, North Jersey Brain & Spine Center ("NJBSC"), by way of Complaint, alleges as follows:

### THE PARTIES

1.     Plaintiff, NJBSC is a neurosurgical medical practice specializing in the treatment of the brain and spinal cord and having its main office located at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649. At all relevant times, the plaintiff was (and is) an "out-of-network" medical practice that provided various medical services to subscribers and/or their dependants enrolled in the healthcare plans operated, controlled and/or administered by the defendant.

2.     Defendant, CIGNA Healthcare of New Jersey, Inc. and CIGNA Corporation (collectively "CIGNA") maintain their corporate offices in Connecticut.

## SUBSTANTIVE ALLEGATIONS

1.       CIGNA operates, controls and/or administers managed healthcare or related insurance plans and claims submitted by its subscribers and/or their dependents.  At all relevant times, CIGNA provided its subscribers/dependents – patients of NJBSC -- with "out-of-network" benefits, enabling these individuals to gain access to the physicians (providers) of their choice, rather than limiting access only to "in-plan" physicians as would be true with a health maintenance organization plan.

2.       Pursuant to New Jersey statutory and administrative regulations, for each patient to be identified in this litigation, CIGNA was obligated to pay NJBSC 100% of plaintiff's billed usual, customary and reasonable ("UCR") fees, less the patient's co-pay, co-insurance or deductible, if any, and/or was required to make payment to plaintiff within 40 calendar days of receipt of plaintiff's bill.  Additionally, CIGNA was unjustly enriched at the expense of NJBSC and/or misrepresented the amount NJBSC would be reimbursed for the services rendered.   Contrary to applicable statutory and administrative code provisions and/or New Jersey Common Law, CIGNA has not paid anything for the surgical services rendered or has underpaid the claims and plaintiff's bills remain outstanding.

3.       It cannot be reasonably disputed that all of the surgical procedures performed were "medically necessary" and some were emergency procedures.

4.       The UCR fee, often referred to as the "reasonable and customary" fee, is defined, or is reasonably interpreted to mean, the amount that "out-of-network" providers, like the plaintiff, normally charge to their patients in the free market, i.e., without an agreement with an insurance company or other payor to reduce such a charge in exchange

for obtaining access to the insurance company's or CIGNA's subscribers. Moreover, the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

5. With respect to the services at issue rendered to the subscribers/dependents, defendant arbitrarily refused to pay the plaintiff correctly for such services. In fact, after being contacted about these claims, defendant has still refused to properly process and pay said claims.

6. By and through this lawsuit, NJBSC now seeks damages, due to defendant's actions.

7. The claims in this lawsuit do not arise under ERISA, do not arise from an assignment of benefits and do not arise under any purported federal common law or doctrine. All of the subject claims arise from New Jersey state common and statutory law.

### FIRST COUNT
**(Unjust Enrichment)**

1. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2. At all relevant times, defendant consistently and systematically refused to pay plaintiff correctly for the medical services it provided to the subscribers/dependents, contrary to its insurance coverage, statutory and regulatory obligations.

3. The defendant was paid premiums by its subscribers for out-of-network benefits and, pursuant to said premiums, was legally obligated to provide such coverage to its subscribers. In order to satisfy its coverage obligations to its subscribers, defendant, by necessity, required the services of NJBSC, to render medical services. Plaintiff did, in fact, render surgical services to defendant's subscribers.

-3-

4.      The defendant has therefore received a benefit as a result of plaintiff's rendering of medical services that remain unpaid.   Thus, CIGNA has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to the plaintiff.

5.      As a result of the defendant's unjust enrichment, NJBSC has suffered damages.

WHEREFORE, plaintiff demands judgment against defendant for:

a)      Compensatory damages;

b)      Interest;

b)      Costs of suit;

c)      Punitive Damages;

d)      Attorney's fees; and

d)      Such other relief as the Court deems equitable and just.

## SECOND COUNT
### (Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered By Non-Participating Providers)

1.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2.   Pursuant to N.J.A.C. 11:22-5.6(b), 11:24-5.3(b), 11:24-5.1(a), and 11:24-9.1(d), defendant was obligated to pay NJBSC 100% of plaintiff's usual, customary and reasonable ("UCR") fees, less the patient's copay, co-insurance or deductible.

-4-

3.   Contrary to New Jersey administrative code provisions, however, defendant CIGNA has not properly paid for the surgical services rendered and plaintiff's bills remain outstanding.

4.   As a result of the defendant's intentional and blatant violations of the subject administrative codes, plaintiff has been damaged.  Plaintiff has a private right of action, express or implied, to prosecute its claim under these regulations.

WHEREFORE, plaintiff demands judgment against defendant for:

a)      Compensatory damages;

b)      Interest;

e)      Costs of suit;

f)      Punitive Damages;

d)      Attorney's fees; and

e)      Such other relief as the Court deems equitable and just

### THIRD COUNT
### (Violations of the HINT Act and HCAPPA)

1.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2.   Pursuant to N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1 (the relevant portions of what is commonly referred to as the Healthcare Information Networks and Technologies ("HINT") Act), and the corresponding administrative code sections codified at N.J.A.C. 11:22-1 et seq., defendant is required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by defendant or, if not submitted electronically, not later

-5-

than forty (40) calendar days following receipt. In the alternative, defendant is required to notify the provider within the same time frames of the specific reasons for a denial or dispute and to expeditiously request any missing information or documentation required to process the claims. (This provision of the HINT Act was amended effective July 11, 2006 as to electronic claims and reduced to seven (7) calendar days pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA")). The failure to do so constitutes an unequivocal waiver of defendant's right to contest such claims for any reason other than fraud. All overdue payments must bear simple interest at the rate of ten (10) percent per annum. (This interest rate increased to twelve (12) percent per annum effective July 11, 2006 pursuant to the Health Claims Authorization, Processing and Payment Act HCAPPA).

3.     Despite its statutory duties, defendant as a matter of its own pattern and practice, delayed payment of properly submitted claims from the plaintiff and did not pay them correctly or at all, and then did not pay interest on the delayed payments. The defendant benefits by this practice. By delaying payment of a claim, defendant earns profits from its use of the funds, profits that it would not earn if payment were made in a timely manner.

4.     NJBSC has submitted "clean" or "eligible" non-capitated claims which defendant has failed to pay within the prescribed statutory time period despite numerous attempts by plaintiff to address and resolve these issues with defendant. These practices by defendant are in violation of the HINT Act and HCAPPA.

5.     The foregoing acts or omissions by defendant, in violation of the HINT Act and HCAPPA, were intentional and accompanied by a wanton and willful disregard of the

rights of plaintiff. These acts or omissions include, but are not limited to, defendant's: (i) delay or denial of payment of properly submitted claims; (ii) failure to pay interest on the delayed payments; (iii) failure to notify plaintiff of the reasons for non-payment of claims; (iv) offering of evasive or incomplete explanations to plaintiff regarding the status of outstanding claims; and (v) failure to timely notify plaintiff of the specific reasons for a claim dispute or denial. The defendant has engaged in such conduct with knowledge that there was a high degree of probability of harm by these acts or omissions because of its understanding that the plaintiff is simply too occupied with the practice of medicine and the care of its patients to be inconvenienced with never ending follow-up communications with defendant on outstanding, unpaid or inappropriately paid claims. The defendant's conduct in this regard demonstrates a reckless indifference to the consequences of its acts or omissions.

6.      As a result of defendant's violations of the HINT Act and HCAPPA, NJBSC has been damaged. Plaintiff has a private right of action, express or implied, to prosecute its claims under the statutes and regulations.

WHEREFORE, plaintiff demands judgment against defendant for:

(a)      Compensatory damages and interest for payment of the medical services provided which remain unpaid, are delayed or reduced as a result of the improper claims processing tactics utilized by the defendant;

(b)      Costs of suit;

(c)      Punitive Damages;

(d)      Attorney's fees; and

(e)      Such other relief as the Court deems equitable and just.

### FOURTH COUNT
### (Misrepresentation)

1.  Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

2.  Despite its pre-authorization of treatment and pre-certification of coverage, defendant intentionally refused and has continued to refuse to pay the subject claims appropriately or at all and, in addition, intentionally and/or negligently used and/or manipulated data that understated the UCR fees for the medical services provided by NJBSC. Because of defendant's intentional, willful and wanton conduct, and/or negligent conduct, plaintiff was paid less than the amount than an accurate UCR allowance computation would have yielded, in accordance with the pre-certification of coverage, or was not paid at all.

3.  Defendant's intentional and/or negligent false promise to pay claims appropriately and its intentional and/or negligent manipulation and skewing of the data utilized in determining the UCR fees, which resulted in payment to the plaintiff of less than the appropriate UCR fee, was unknown to the plaintiff at the time it agreed to perform the medical services for the subscribers and/or their dependents. Plaintiff reasonably expected and relied upon what it believed to be defendant's honest representations that the plaintiff would be properly compensated in accordance with the pre-certification of coverage.

4.  NJBSC's reliance on these representations was to its substantial detriment and as a result the plaintiff suffered significant money damages.

5.  By virtue of the foregoing, defendant has committed intentional and/or negligent misrepresentation.

WHEREFORE, plaintiff demands judgment against defendant for:

a)    Compensatory damages;

b)    Punitive damages;

c)    Interest;

d)    Costs of suit;

e)    Attorney's fees; and

f)    Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

DATED:  April 10, 2009                    By:_____
                                                    ERIC D. KATZ

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Eric D. Katz, Esq. as trial counsel in the above matter.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

DATED:  April 10, 2009                    By:_____
                                                    ERIC D. KATZ

-9-

## CERTIFICATION PURSUANT TO RULE 4:5-1(b) 2

ERIC D. KATZ, of full age, hereby certifies that:

1      I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for plaintiff in this action.

2.      To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

3.      No other actions or arbitration proceedings are contemplated by this plaintiff against the defendant at this time.

4.      I know of no other parties that should be joined in this action at this time.

I certify that the foregoing statements made by me are true. I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.


DATED:  April 10, 2009                                        _____
                                                                              ERIC D. KATZ

H:\EDK\Comp Neuro\CIGNA III\Complaint and Jury Demand 4-10-09.doc

-10-

# Exhibit C

 **Account Activity for Robert L_____** 
*Printed on June 22, 2010*

| 07/06/2004 | Lee Goldberg | SPOKE W/WIFE TINA. ADVISED HER TO CALL CIGNA AND CALL ME BACK WITH RESOLUTION |
| 07/06/2004 | Lee Goldberg | CALLED CLAIMS DEPT AGAIN RE DENIAL OF PAYMENT FOR INITIAL CONSULT AND F/U. SPOKE W/ CHRYSTAL. SAID EXPLANATION WAS SENT TO US AND THE PATIENT UNDER SEPARATE COVER |
| 07/06/2004 | Lee Goldberg | CALLED CLAIMS DEPT SPOKE W/ENID. CONFIRMED PATIENT'S OUT OF NETWORK BENEFITS: $500 DEDUCTIBLE, 70% - 30% OF DOCTORS USUAL REASONABLE AND CUSTOMARY FEES |
| 07/06/2004 | Lee Goldberg | CLAIMS DEPT 800-438-3790 |
| **Date** | **User** | **Refile Notes** |
| 11/09/2004 | Lorraine P. | 00009170 Refiled Claim |
| **Date** | **User** | **Statement Notes** |

# Exhibit D




# *Account Activity for N̶█▆█ I̶█████*
### *Printed on June 22, 2010*

## Notes

| Date | User | Billing Notes |
|------|------|---------------|

<br>
<br>
<br>




| 02/09/2004 | Lee Goldberg | CALLED CIGNA CLAIMS DEPT 800-214-0720.   SPOKE WITH THERESA. VERIFIED OUT OF NETWORK BENEFITS:  $300.00 DEDUCTIBLE, 70% - 30% USUAL REASONABLE AND CUSTOMARY FEES.   EFFECTIVE COVERAGE:  1/1/02.  AFTER $2,500.00 OUT OF POCKET EXPENSE, CIGNA WILL PAY 100% |
|------------|--------------|---------------|
| 05/09/2006 | Lorraine P | 00006871 Refiled Claim |

*Account Activity for N̶██ I̶█████ -- June 22, 2010*
*Requested by Lee Goldberg*