# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES MAGISTRATE JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST.**<br>**ROOM 2060**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

June 30, 2011

Eric Katz, Esq.
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068

E. Evans Wohlforth, Jr., Esq.
Gibbons, P.C.
One Gateway Center
Newark, New Jersey 07102-5310

### REPORT & RECOMMENDATION

Re:  North Jersey Brain & Spine Center v. Connecticut General Life Ins. Co., Civil Action No. 10-4260 (SDW)

Dear Counsel:

Before this Court is the motion of plaintiff North Jersey Brain & Spine Center ("plaintiff") to remand this action to the Superior Court of New Jersey. (Docket Entry 11). Defendant Connecticut General Life Insurance Company ("CGLIC") opposes the motion. Judge Wigenton referred the motion to me for Report and Recommendation.

This Court held oral argument on May 4, 2011, and reserved ruling from the bench. Having considered the parties' submissions, their positions during oral argument, for good cause shown, and for the reasons set forth herein, this Court recommends that the motion to remand be **DENIED**.

## I.    BACKGROUND

Plaintiff is a neurosurgical medical practice, which provides medical services to individuals who are covered under healthcare insurance plans of CGLIC[1] operated, controlled and/or

---

[1] Plaintiff originally sued CIGNA Corporation and CIGNA Healthcare of New Jersey ("CIGNA defendants"). However, the parties ultimately entered into a stipulation in which the

administered by CGLIC. (Am. Compl., ¶¶ 1, 3). As an out-of-network provider, plaintiff has no contractual agreement with CGLIC for payment of services. Yet, according to plaintiff, before providing medical services to each plan participant or beneficiary, its representative spoke with CGLIC's representative, who confirmed that the patient had out-of-network coverage and that CGLIC would pay agreed upon usual, customary, and reasonable ("UCR") fees.[2] (Am. Compl., ¶ 5). Relying on these representations, plaintiff rendered medical services to the patients, including by way of example, patients R.L. and N.I. Id. Yet, CGLIC subsequently paid plaintiff significantly less than the amount it had previously agreed to pay. Id.

On June 28, 2010, plaintiff filed the instant action in the Superior Court of New Jersey, Bergen County. Plaintiff asserts claims for promissory estoppel, unjust enrichment as well as negligent and intentional misrepresentation. Plaintiff avers that all of its claims arise solely under state common law and do not implicate ERISA, nor do they require any review or consideration of any ERISA plan documents. (Am. Compl., at ¶ 9).

On August 18, 2010, CGLIC removed the case asserting federal question jurisdiction based on the preemptive force of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and diversity jurisdiction. On November 24, 2010, plaintiff filed the instant motion to remand,[3] claiming that ERISA does not preempt any of its state law claims. Plaintiff further asserts that there is no diversity jurisdiction because the amount in controversy is only $63,000, based on the outstanding fees owed for medical services rendered only to R.L. and N.I. Thus, the amount in controversy is less than the jurisdictional threshold amount.

Significantly, on April 13, 2009, fourteen months before filing the instant suit, plaintiff filed a nearly identical action against CGLIC's affiliate, CIGNA ("CIGNA action"). Both lawsuits involve the same factual dispute over the proper amount of reimbursement for medical bills pursuant to agreed upon UCR fees and the same jurisdictional dispute over whether plaintiff's claims are preempted by section 502(a) of ERISA. Compare Am. Compl., Civ. Action No. 10-4260 (SDW) at Dkt. Entry 9, with Compl., Civ. Action No. 09-2630 (JAG) at Dkt. Entry 1-1. In both actions, plaintiff has asserted that none of the state law claims arise under the civil enforcement provision of ERISA; from an assignment of benefits; or under any purported federal common law or doctrine.

---

proper defendant, CIGNA-affiliate CGLIC, was identified. The original CIGNA defendants were dismissed and plaintiff, by consent, filed an amended complaint naming only CGLIC as a defendant in this action.

[2] According to plaintiff, the UCR fee is defined as the amount that out-of-network providers routinely charge to their patients in the free market, i.e., "without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the insurance company's or CIGNA's subscribers." (Am. Compl., at ¶ 6).

[3] On December 30, 2010, CGLIC filed a motion to dismiss the amended complaint, which is pending before Judge Wigenton.

(Am. Comp., at ¶ 9; 4/13/09 Comp., at ¶ 7).

There are two principal differences between the two lawsuits. The focus of plaintiff's factual theory has shifted, and plaintiff here asserts only common law claims. Plaintiff's factual theory rests solely on CGLIC's verbal representations of coverage and authorization for treatment of patients, including R.L. and N.I., with the understanding that CGLIC would pay plaintiff for its medical services based on the agreed UCR fees. In this lawsuit, plaintiff asserts claims of promissory estoppel, unjust enrichment and misrepresentation only.

In the CIGNA action, plaintiffs claimed: (1) that the CIGNA defendants failed to timely pay plaintiff a specific percentage of its UCR fees in violation of certain New Jersey regulations, New Jersey statutes, and CIGNA's insurance coverage; (4/13/09 Compl., at ¶¶ 2, 5 p.2-3, ¶ 2 p.3); and (2) the CIGNA defendants falsely promised to properly compensate plaintiff as agreed and "in accordance with the pre-certification of coverage," (id. at ¶¶ 2-3 p.8), giving rise to state common law unjust enrichment and intentional/negligent misrepresentation claims.

After the CIGNA action was removed, plaintiff moved to remand. This Court found that removal was proper because all of plaintiff's state law claims were completely preempted under section 502 of ERISA. (See R&R in Civ. Action No. 09-2630 (GEB) at Dkt. Entry 17).

On March 5, 2010, Judge Greenaway adopted the Report and Recommendation and denied plaintiff's remand motion. On March 15, 2010, the CIGNA defendants moved to dismiss the Complaint. Two days later, plaintiff filed a notice of voluntary dismissal without prejudice.[4] This instant action was filed three months later.

## II.   LEGAL STANDARD FOR REMOVAL

As a preliminary matter, a district court has subject matter jurisdiction over state law claims, pursuant to 28 U.S.C. § 1332, if each plaintiff is a citizen from a state different from each defendant and the amount in controversy exceeds $75,000. See Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d. Cir. 2002). Furthermore, a district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. A claim brought in state court may be removed to federal court under 28 U.S.C. § 1441.

A party may seek to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A party opposing remand must show that removal was proper. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991).

The Third Circuit has held that "the party asserting federal jurisdiction in a removal case

---

[4] After Judge Greenaway's evaluation to the United States Court of Appeals for the Third Circuit, the prior action was reassigned to Chief Judge Brown.

bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)). Thus, in opposing remand based on lack of subject matter jurisdiction, the removing party, here CGLIC, bears this burden.

### III. ANALYSIS

#### A. Diversity Jurisdiction

Here, there is no dispute that the parties are diverse. Plaintiff is a New Jersey citizen, while CGLIC is a Connecticut citizen. Rather, plaintiff contends that CGLIC has not met its burden of proving that plaintiff's losses exceed $75,000. Yet, in its remand papers, plaintiff acknowledges that its request for punitive damages concerning its intentional misrepresentation claim (count four) could satisfy the jurisdictional amount in controversy requirement.[5]

The complaint does not specify the amount of damages sought by plaintiff. Rather, at the time of removal, plaintiff's complaint stated that plaintiff "seeks damages from CIGNA, including compensatory and punitive damages, for promissory estoppel, misrepresentation and unjust enrichment." (Orig. Compl., at ¶ 7).[6]

When a plaintiff does not limit his/her request for damages in the complaint to an exact monetary amount, the Court must independently review the value of each legal claim to determine whether they satisfy the amount in controversy requirement independent of one another. Dovale v. Marketsource, Inc. civ. no. 05-2872 (FLW) (D.N.J. Oct. 7, 2005) (citing Ciancaglione v. Sutherlin, 2004 WL 2040342, at *2 (E.D. Pa. Sept. 14, 2004)). CGLIC points to plaintiff's request for punitive damages and attorney's fees as evidence that plaintiff's claims have potential value to exceed $75,000.

Since punitive damages are available for intentional torts, the court may properly consider punitive damages in determining the jurisdictional amount. See Bell v. Preferred Life, 320 US 238, 240 (1943); Packard v. Provident Nat'l Bank, 999 F.2d 1039, 1046 (3d Cir. 1993). As such, this

---

[5]During the May 4, 2011 oral argument, plaintiff's counsel represented that plaintiff intended to withdraw its negligent and intentional misrepresentation claims and file an amended complaint to that effect. Accordingly, plaintiff submits that the amount in controversy is limited to the $63,000 sought as reimbursement for services rendered to patients R.L. and N.I. However, as explained above, this Court's analysis is based on the face of the complaint at the time of removal, not potential amendments.

[6]The complaint does not limit the damages sought only to unpaid fees incurred for medical services rendered to patients R.L. and N.I. Rather, the complaint lists these two patients merely by way of "illustrative example, and "without limitation as to patients, dates and services . . . ." (Compl., at ¶ 3).

Court is satisfied that CGLIC has met its burden with respect to the jurisdictional amount. Thus, CGLIC's removal of the case was proper, and the Court recommends that remand be denied on this basis alone.

### B.     Federal Question Jurisdiction/ERISA preemption

The thrust of plaintiff's remand motion is that it has not filed suit in its derivative capacity as an assignee of ERISA plan benefits. Rather, plaintiff sues in its independent status as a third-party health care provider based on CGLIC's false promises to pay a specific percentage of plaintiff's UCR fees. Thus, according to plaintiff, as its claims do not challenge plan benefits or in any way implicate the ERISA plans, neither its promissory estoppel nor its unjust enrichment claims are preempted.[7]

CGLIC's opposition is two-fold: (1) plaintiff is judicially estopped from arguing that it did not receive a valid assignment of benefits or that its unjust enrichment claim is not preempted because plaintiff so conceded during oral argument on its remand motion in the prior lawsuit; and (2) that section 502(a) of ERISA – the civil enforcement mechanism – provides exclusive remedies regarding the denial of payment or underpayment of benefits under ERISA governed health benefit plans. Accordingly, under the test set forth by the Third Circuit in Pascack Valley Hospital v. LOCAL 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004), CGLIC argues because plaintiff has standing to bring a claim as a valid assignee under section 502(a), and no separate legal duty exists to support plaintiff's claims, plaintiff's promissory estoppel and unjust enrichment claims are preempted.

Typically, the pleading determines whether a complaint is subject to federal law. The Supreme Court has stated: "It is long settled law that a cause of action arises under federal law only when plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). The fact that a plaintiff's state law claims may be preempted by federal law is insufficient to confer federal question jurisdiction. Dawson v. Ciba-Geigy Corp., 145 F. Supp. 2d 565, 568 (D.N.J. 2001).

However, "in certain circumstances the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the 'well-pleaded complaint' rule." Id. Thus, the doctrine of complete preemption permits removal of an action to federal court when: (1) a federal statute wholly displaces a state law cause of action and creates a superseding cause of action, and (2) there is a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Railroad Labor Executives Ass'n v. Pittsburg & Lake Erie R.R., 858 F. 2d 936, 942 (3d Cir. 1988). Where complete preemption exists, removal is proper although there is no federal cause of action on the face of the complaint. Rivet v. Regions Bank of L.A., 522 U.S. 470, 475 (1998). Where the

---

[7] During oral argument, plaintiff's counsel represented that plaintiff intends to voluntarily dismiss its negligent and intentional misrepresentation claims. As such, the Court declines to address the merits of whether such claims are preempted by section 502 of ERISA.

"preemptive force " of federal law "is so powerful as to displace entirely any state cause of action" for the same claim, the state claim "necessarily 'arises under' federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983). Because the Supreme Court has only invoked the complete preemption doctrine in "extraordinary" cases, this Court must narrowly construe it. Englewood Hosp. and Med. Ctr. v. Aftra Health Fund, 2006 WL 3675261, * 3 (D.N.J. Dec. 12, 2006) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)).

Recognizing the narrow scope of the doctrine, the Third Circuit examined complete preemption in the context of ERISA. See, e.g., Pascack Valley Hosp., 388 F.3d at 402. As previously noted, in Pascack, the Third Circuit established a two-prong test for determining whether ERISA completely preempts a state court claim, and thus the action is removable. Id. at 396. The Third Circuit explained there that a case is removable only if "(1) the [plaintiff] Hospital could have brought its breach of contract claim under § 502(a) [of ERISA], and (2) no other legal duty supports the [plaintiff] Hospital's claim." Id. at 400.

There is no dispute that a federal question is not presented on the face of the complaint. A plain reading of the complaint makes clear that plaintiff seeks relief under New Jersey common law. Plaintiff does not seek relief under ERISA or any other federal statute or the constitution. However, a court may "'look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law.'" Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273 (3d Cir. 2001) (quoting Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1488 (7th Cir. 1996)).

1. Plaintiff's Standing to Sue Under Section 502(a)

With respect to the first prong of the Pascack test, it is undisputed that a health care provider can bring a claim under section 502(a) "where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." Pascack Valley Hosp., Inc., 388 F.3d at 401 n.7. See, e.g., Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of NJ, 2009 WL 3233427 at *5 (D.N.J. Sept. 30, 2009); Wayne Surgical Ctr. v. Concentra Preferred Sys., Inc., 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007).

Plaintiff here argues that it is not seeking to sue under section 502(a) in a derivative capacity, and thus, whether it received a valid assignment of benefits is not relevant to its remand motion. This Court disagrees. As the Third Circuit made clear in Pascack, the Court must determine whether a valid assignment has been made, and thus, allow a health care provider to have standing to sue under ERISA. Pascack Valley Hosp., Inc., 388 F.3d at 401-02. See Cmty. Med. Ctr v. Local-464A UFCW Welfare Reimbursement Plan, 143 F. App'x 433 (3d Cir. 2005).

The "INSURANCE AUTHORIZATION AND ASSIGNMENT" for R.L. and N.I. provides in relevant part: "I hereby assign to North Jersey Brain & Spine Center all payments for medical services rendered to myself or my dependents." (See 3/28/11 Eric Katz Supp. Cert. at Exhs. A & B).

Plaintiff argues that the assignments, which were for the benefit of reimbursement of certain medical costs only, are not valid assignments of all benefits. Therefore, these assignments are insufficient for CGLIC to establish plaintiff's derivative standing under ERISA.

By contrast, CGLIC argues that, since the only plan benefit at issue here is the benefit of reimbursement, there is no distinction between an assignment of a right to payment and an assignment of plan benefits. Therefore, the executed assignments are valid to establish plaintiff's derivative standing under ERISA and satisfy prong one of the Pascack test.

The Court agrees that such assignments are sufficient to establish plaintiff's derivative standing under ERISA and consistent with the Third Circuit's decision in Community Medical Center. See Cmty. Med. Ctr , 143 F. App'x at 435-36.[8]

In Community Medical, the ERISA-plan defendant argued that the parties' separate subscriber contract defined the plaintiff hospital's "claim as an assignment of the patient's right to reimbursement," and thus the contract sufficiently established the existence of a valid assignment of benefits. Id. at 435. The Third Circuit rejected that argument and found that no such valid assignment had been made. Id. Relying on Pascack, the Third Circuit stated:

> 'Whether the Subscriber Agreement requires the Hospital to obtain an assignment in order to demand payment from the Plan *says*

---

[8] The Court rejects CGLIC's alternate contention that plaintiff is judicially estopped from now challenging the validity of the assignments based on plaintiff's counsel's prior statements in the prior action. Judicial estoppel is an equitable doctrine, whereby it prevents a party from taking a position favorably inconsistent with one taken in an earlier proceeding. New Hampshire v. Maine, 532 U.S. 742, 755 (2001). In Maine, the Supreme Court identified several factors for a reviewing court to consider regarding the application of the doctrine. Id. at 755. See Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008). Yet, the Third Circuit has instructed that judicial estoppel has three threshold factors: "first, the party . . . must have adopted irreconcilably inconsistent positions; second, the party must have adopted these positions in 'bad faith'; and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient." Chao, 517 F.3d at 186 n.5.

Here, this Court's review of the transcript from the November 2009 remand oral argument reveals that plaintiff's counsel made an assumption that a valid assignment had been executed. Such a statement does not amount to an admission that a valid assignment has in fact been made. Thus, the Court cannot find plaintiff has taken "irreconcilably inconsistent positions." In any event, plaintiff did not take such a position to gain any unfair advantage. See New Hampshire, 532 U.S. at 755. In fact, counsel's assumption resulted in an adverse ruling for plaintiff - i.e., this Court recommended denying remand. Additionally, there has been no evidence presented that plaintiff took any position regarding the validity of the assignments in "bad faith."

> *nothing about whether an assignment was in fact made. Because neither [plan participant is a party] to the Subscriber Agreement, that document cannot, in and of itself, establish an assignment of their claims.*"[9]

Cmty. Med. Ctr., 143 F. App'x at 435-36 (quoting Pascack Valley, 388 F.3d at 401) (Emphasis added). By contrast, the executed "INSURANCE AUTHORIZATION AND ASSIGNMENT" form here unequivocally establishes that an assignment of the only plan benefit at issue (i.e., the benefit of reimbursement) was in fact made.

In addition, the Court finds compelling those cases, which have held that an assignment of a right to reimbursement logically includes the right to judicially enforce the reimbursement rights, and thus, creates a valid assignment under ERISA. See, e.g., Ambulatory Surgical Ctr. of New Jersey v. Horizon Healthcare Services, Inc., 2008 U.S. Dist. LEXIS 13370, at * 8 (D.N.J. Feb. 21, 2008) (SDW) ("[I]t would be illogical to allow ASCNJ to be a valid reimbursement assignee but not allow it to judicially enforce that right. Therefore, ASCNJ has standing under ERISA due to the validity of its patients's assignments of benefits."); Wayne Surgical Ctr., LLC, 2007 WL 2416428, at * 4 (same).

2.  Existence of a Legal Duty Independent of ERISA

The Court next considers whether, pursuant to the second prong of the Pascack test, plaintiff's promissory estoppel and unjust enrichment claims, based on CGLIC's alleged false oral promise to pay a specified UCR rate to plaintiff, provides a legal duty independent of ERISA, and thus are not completely preempted. As detailed below, the Court finds that no such independent legal duty exists, and thus, the second requirement has been met.

Plaintiff contends that, under New Jersey common law, it can proceed with its legal claims for unpaid and underpaid medical provider bills. According to plaintiff, the ERISA health plans are not implicated because plaintiff is suing as a third-party provider for damages flowing from CGLIC's false promise to pay for the patients' medical treatment. As such, plaintiff's promissory estoppel and unjust enrichment state law claims are not preempted by ERISA.

In opposition, CGLIC contends that plaintiff's state law claims do not create any legal duty independent of ERISA because these claims arise from the parties' dispute over the meaning of "UCR," which is a term contained in the ERISA plans at issue. According to CGLIC, plaintiff's

---

[9] In Pascack, the Third Circuit analyzed whether the defendant benefit plan presented sufficient evidence of an actual assignment of a right to reimbursement. Ultimately, the court found the evidence was insufficient. 388 F.3d at 401-02. In so ruling, the court stated, "[t]hus, the Plan itself contemplates an independent act by which a participant or beneficiary assigns his or her claim [for a right to reimbursement] to the Hospital. The record contains no evidence that Psaras or Rovetto undertook such an act." Id. at 402.

promissory estoppel and unjust enrichment claims seek damages flowing from what CGLIC determined was owed to plaintiff under the terms of the ERISA plans and what plaintiff believed it was owed under those plans. As such, the state law claims squarely fall within the civil enforcement scheme of section 502 of ERISA.

Under the second prong of the Pascack test, this Court must examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an "essential part" of Plaintiff's claims. See Pascack Valley, 388 F.3d at 402. In finding a separate legal duty, the Third Circuit in Pascack reasoned that:

> The Hospital's claims, to be sure, are derived from an ERISA plan, and exist 'only because of that plan. The crux of the parties' dispute is the meaning of . . . the Subscriber Agreement, which governs payment for 'Covered Services furnished to Eligible Persons.' Were coverage and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the Hospital's claims. Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself.

Pascack Valley, 388 F.3d at 402 (internal citations omitted).

Here, unlike the plaintiff hospital's claims in Pascack, plaintiff's right to recovery, if it exists, does not depend on the operation of a contract separate from the ERISA plans at issue. Rather, the patients were covered under the plans at the time of treatment, the patients assigned their ERISA benefits to plaintiff, plaintiff billed CGLIC for its services performed pursuant to the plan coverage and the assignment, and CGLIC partially paid plaintiff's bills pursuant to the plans. Because no separate contract governs plaintiff's right to payment, plaintiff's promissory estoppel and unjust enrichment claims are inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits.[10] See Wayne Surgical Ctr., 2007 WL 2416428, at *5; Ala. Dental Assoc. v. Blue Cross & Blue Shield of Ala., Inc., 2007 WL 25488, at *5 (M.D. Ala. Jan. 3, 2007). As such, this case is easily distinguishable from Pascack and other cases, wherein the resolution of the parties' dispute depended entirely on the operation of separate contracts, not the ERISA plan itself. See, e.g., Pascack Valley, 388 F.3d at 402; Barnert Hosp. v. Horizon Healthcare Services, 2007 WL 1101443, at *11 (D.N.J. Apr. 11, 2007); Englewood Hosp. and Med. Ctr., 2006 WL 3675261 at *5.

Plaintiff's reliance on several cases outside of this Circuit, which pre-date Pascack and other

---

[10] At oral argument, plaintiff's counsel represented that plaintiff intended to voluntarily dismiss its negligent and intentional misrepresentation claims. As such, the Court does not reach whether those claims are preempted.

binding Third Circuit precedent, is misplaced. In Pryzbowski, 245 F.3d at 273, the Third Circuit held that "cases challenging the quality of the medical treatment performed" are not completely preempted by section 502(a) of ERISA, but "cases where the claim challenges the administration of, or eligibility for, benefits" are completely preempted. Thereafter, in Levine v. United Healthcare Corp., the Third Circuit held that claims for "reimbursement of previously paid health benefits," are claims for "benefits due," and thus are completely preempted by section 502(a) of ERISA. Levine, 402 F.3d 156, 163 (3d Cir. 2005) (citing Pryzbowski, 245 F.3d at 273).

Guided by these Third Circuit decisions, this Court finds that plaintiff's claims for promissory estoppel and unjust enrichment seek reimbursement of billed medical charges and relate to challenges to the "administration" of benefits rather than the "quality of the medical treatment performed." Pryzbowski, 245 F.3d at 273. As such, as noted above, such claims cannot be resolved without reference to the benefit plans governed by ERISA and interpretation of the plan term, "UCR." See, e.g., Wayne Surgical Ctr., 2007 WL 2416428, at * 6 (concluding that state law claims for unjust enrichment, tortious interference, and violation of New Jersey Fraud Act cannot be resolved with reference to ERISA benefit plans); Thomas v. Aetna Inc., 1999 WL 1425366, at *9 (D.N.J. Jun. 8, 1999) (reaching same conclusion as to fraudulent inducement claim).

Finally, even if this Court were to consider those cases on which plaintiff primarily relies to support its position, the Court finds that such cases are distinguishable from the instant action. The courts' decisions in those cases were based either on a finding that the plan participant or beneficiary was not covered at all by an existing ERISA plan or were analyzed under express preemption (or conflict preemption) under section 514(a) of ERISA rather than under section 502(a). See, e.g., The Meadows v. Employers Health Ins., 47 F.3d 1006, 1009 (9th Cir. 1995) (during the relevant time period covered by the complaint, patients were not covered by ERISA plan at issue); Hospice of Metro Denver, Inc. v. Group Health Ins. Of Oklahoma, Inc., 944 F.2d 752, 754-755 (11th Cir. 1991) (analyzing § 514(a) of ERISA and finding state law claims not preempted because no coverage actually existed under the defendant's plan) Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 245 (5th Cir. 1990) (same); Variety Children's Hosp., Inc. v. Blue Cross/Blue Shield of Florida, 942 F. Supp. 562 (S.D. Fl. 1996) (analyzing state law claims under § 514(a) of ERISA). See also Cypress Fairbanks Med. Ctr. v. Pan-Am. Life Ins. Co., 110 F.3d 280, 283) (5th Cir. 1997) (clarifying that Fifth Circuit's prior ruling in Memorial Hospital should be understood to mean that § 514(a) ERISA does not preempt a third-party provider's state law claims if such claims are "premised on a finding that the beneficiary is not covered at all by an existing ERISA plan.").

As CGLIC has demonstrated that both prongs of the Pascack test are met here, this Court is satisfied that plaintiff's promissory estoppel and unjust enrichment claims are completely preempted by ERISA's civil enforcement provision, and thus, removal was proper. Consequently, the Court respectfully recommends that plaintiff's motion to remand be **DENIED**.

### IV.    CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the motion to

remand be **DENIED**.  The parties have fourteen (14) days from receipt hereof to file and serve objections.


                                                         *s/Madeline Cox Arleo*
                                                         **MADELINE COX ARLEO**
                                                         **United States Magistrate Judge**


cc:    Clerk
        Hon. Susan D. Wigenton, U.S.D.J.
        All Parties
        File